James CHONGRIS and George
Chongris, Plaintiffs,

v.

BOARD OF APPEALS OF the TOWN
OF ANDOVER, et al., Defendants.

Civ. A. No. 80-2316-S.

United States District Court,
D. Massachusetts.

July 30, 1985.

Arthur H. Goldsmith, Boston, Mass., for
plaintiffs.

William A. Brown, Gerald F. Blair, Avery, Dooley, Post & Avery, Kenneth L. Carson, Sugarman, Rogers, Barshak & Cohen, Morrison, Mahoney & Miller, Boston, Mass., Stephen R. Duly, Andover, Mass., for defendants.

## MEMORANDUM AND ORDER

SKINNER, District Judge.

In this case, plaintiffs challenge the actions of the Andover Board of Appeals (the "Board") as well as the validity of certain state zoning review, notice and appeal procedures, set out in M.G.L. c. 40A, §§ 11, 15 and 17, on constitutional and federal statutory grounds. Plaintiffs also seek compensatory damages, attorney's fees, declaratory relief and an injunction restraining the defendants from interfering with plaintiffs' "rights or business". The Board answered, asserted a counterclaim for abuse of process, and moved to dismiss plaintiffs' complaint on various grounds. Plaintiffs, in turn, moved for summary judgment.

This longstanding dispute began in August of 1979 when the plaintiffs received a permit to build a Dunkin Donuts shop in Andover, Massachusetts from Andover Building Inspector William Meins. The permit was issued over the objections of a local voluntary citizens' organization, the Friends of Shawsheen Village Association ("Friends").

On August 30, 1979, the Friends filed a letter with the Board seeking to appeal Inspector Meins' decision. Notice of a hearing on the appeal was published and mailed to "interested parties" (presumably including the plaintiffs). The notice and petition for appeal stated four grounds for opposing the permit: insufficient setback; insufficient parking; improper use of "curb service"; and violation of zoning bylaws pertaining to business signs.

The Board held a public hearing on the Friends' petition on November 1, 1979. Plaintiffs allege that they were not permitted to cross-examine witnesses at the hearing and were not given adequate notice of the substance of the issues to be ad-dressed. James Chongris and his attorney attended the hearing, however, and convinced the Board and the Friends to take a view of the premises before acting on the appeal.

On the morning of November 10, 1979, the Board and Friends viewed the premises. James Chongris claims that he and his attorney received notice of the time of the view at 8:00 a.m. that morning and were therefore unable to attend.

On November 13, 1979, the Board unanimously voted to revoke plaintiffs' permit. Shortly thereafter, plaintiffs filed a suit in state Superior Court seeking review of the revocation. Prior to receiving the Board's answer in that action, plaintiffs filed this action in federal court on October 14, 1980. In February, 1981, plaintiffs filed in both superior and federal court a reservation of their federal claims pending completion of the state court case.

The Essex County Superior Court annulled the Board's permit revocation on December 29, 1982, finding that the Friends did not have standing to challenge the issuance of the permit. That decision was subsequently upheld by the Massachusetts Appeals Court on February 15, 1984. *See Chongris v. Board of Appeals of Andover*, 17 Mass.App. 999, 459 N.E.2d 1245 (1984).

The defendants have moved to dismiss plaintiffs' instant federal claims on the ground of *res judicata*. It is settled that federal courts are to give state court judgments the same preclusive effect that state law prescribes. 28 U.S.C. § 1738; *Sires v. Gabriel*, 748 F.2d 49 (1st Cir.1984). Under Massachusetts law, the doctrine of *res judicata* prevents the relitigation of issues that were or could have been litigated in a prior action. *Id.* The defendants conclude that, because plaintiffs' constitutional and federal statutory claims could have been raised in their prior action in Essex Superior Court, those claims are barred.

Plaintiffs contend that they effectively reserved their right to litigate their federal

claims separately in this court pursuant to their February 1981 reservation. In support of this theory, plaintiffs rely upon *England v. Louisiana Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1963). My examination of the purpose and history of the doctrine of reservation of rights, however, leads me to conclude that plaintiffs' argument is without merit and that this action is barred by virtue of the prior state case.

The doctrine of reservation of rights was first formally articulated in *England.* There, the Court attempted to resolve uncertainties created by two of its prior cases dealing with abstention: *Government Employees v. Windsor*, 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894 (1963) and *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

In *Windsor*, plaintiff labor union initially brought suit in the federal district court seeking to enjoin, on constitutional grounds, the enforcement of a state statute regulating "labor union[s] or labor organization[s]". The district court retained the case but withheld exercise of its jurisdiction in order to permit plaintiffs first to exhaust state remedies.

Plaintiffs thereupon sought a ruling from the state courts as to whether they were subject to the statute. Plaintiffs, however, did not raise their constitutional challenges at the state level. The state's highest court eventually held that the union was subject to the statute but offered no opinion as to the statute's constitutionality.

Upon receiving the adverse state judgment, plaintiffs returned to the federal district court in order to raise their constitutional challenge. The district court dismissed the case stating that the state "courts have not construed the [challenged statute] 'in such a manner as to render it unconstitutional, and, of course, we cannot assume that the State courts will ever so construe said statute.'" 353 U.S. at 366, 77 S.Ct. at 839 (quoting 146 F.Supp. 214, 216).

On appeal, the United States Supreme Court remanded the case to the district court "with directions to retain jurisdiction until efforts to obtain an appropriate adjudication in the state courts have been exhausted." *Id.*, 353 U.S. at 367, 77 S.Ct. at 839.

In support of this result, the Court explained that

[I]n an action brought to restrain the enforcement of a state statute on constitutional grounds, the federal court should retain jurisdiction until a definitive determination of local law questions is obtained from the local courts. One policy served by that practice is that of not passing on constitutional questions in situations where an authoritative interpretation of state law may avoid the constitutional issues. (citation omitted) Another policy served by that practice is the avoidance of the adjudication of abstract, hypothetical issues. Federal courts will not pass upon constitutional contentions presented in an abstract rather than in a concrete form. (citation omitted) The bare adjudication by the Alabama Supreme Court that the union is subject to this Act does not suffice, since that court was not asked to interpret the statute in light of the constitutional objections presented to the District Court. If appellants' freedom-of-expression and equal-protection arguments had been presented to the state court, it might have construed the statute in a different manner.

*Id.* at 366, 77 S.Ct. at 839.

In *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), plaintiffs brought suit in federal court challenging the constitutionality of certain state statutes which had never been construed by the state courts. The federal court abstained in order to permit plaintiffs to seek an interpretation of the statute in state court. Unlike the plaintiffs in *Windsor*, however, the NAACP sought a determination by the state court as to whether the statute applied to their activities and, if so, whether it was constitutional. The state

courts found that the statutes applied to the NAACP and also were constitutional.

Thereupon the NAACP filed a petition for *certiorari* in the United States Supreme Court.

Before reaching the merits, the Court questioned whether it could properly take jurisdiction over the case in light of the federal district court's previous abstention. The Court specifically noted that when a federal court abstains, it merely postpones exercise of its jurisdiction, it does not entirely abdicate it. 371 U.S. at 427, 83 S.Ct. at 335. The Court concluded, however, that plaintiffs were not required to return to the district court because they had unreservedly submitted all their claims to the state court. The Court explained that where

> the party remitted to the state courts elects to seek a complete and final adjudication of his rights in the state courts, the District Court's reservation of jurisdiction is purely formal, and does not impair our jurisdiction to review directly an otherwise final state court judgment. (Citation omitted). We think it clear that petitioner made such an election in the instant case, by seeking from the Richmond Circuit Court "a binding adjudication" of all its claims and a permanent injunction as well as declaratory relief, by making no reservation to the disposition of the entire case by the state courts, and by coming here directly on certiorari.

*Id.* at 427–28, 83 S.Ct. at 335.

Finally, in *England v. Louisiana Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1963), plaintiff chiropractors originally brought suit in federal court seeking both an interpretation of a state statute regulating medical licenses, and, if the statute were found to apply to them, a ruling on its constitutionality. The federal district court abstained, as did the lower federal courts in *Windsor* and *Button*, and "shunted" plaintiffs to state court. After litigating and losing both their state and federal claims in state courts, plaintiffs attempted to return to federal district court. The district court dismissed plaintiffs' second action on the ground that their proper remedy was by appeal to the Supreme Court of the United States. The dismissal was upheld by the Court of Appeals and plaintiffs sought review in the Supreme Court.

Overturning the courts below, the Court, through Justice Brennan, held that

> in cases where, but for the application of the abstention doctrine, the primary fact determination would have been by the District Court, a litigant may not be deprived of that determination ... he may inform the state courts that he is exposing his federal claims there only for the purpose of complying with *Windsor*, and that he intends, should the state court hold against him on the question of state law, to return to the District Court for disposition of his federal contentions.

375 U.S. at 417, 421, 84 S.Ct. at 465, 467.

The Court thus made clear that the right to reserve a federal forum was intended strictly to protect plaintiffs in "abstention cases":

> The line drawn should be bright and clear, so that litigants shunted from federal to state courts by application of the abstention doctrine will not be exposed, not only to unusual expense and delay, but also to procedural traps operating to deprive them of their right to a District Court determination of their federal claims.

*Id.* at 418, 84 S.Ct. at 466.

■ In light of the above, it is clear that the right to reserve the federal forum was created as an accommodation between the duty of federal courts to accept jurisdiction of federal cases, and the policy of abstention in order to allow state courts to construe their statutes in the context of a constitutional challenge. Indeed, the Supreme Court recently stated that "[t]he holding in *England* depended entirely on this Court's view of abstention..." *Allen v. McCurry*, 449 U.S. 90, n. 17, 101 S.Ct. 411, n. 17, 66 L.Ed.2d 308 (1980). I there-

**1002**

fore find no reason to extend *England* beyond its intended scope.

■ In contrast to the plaintiffs in *Windsor, Button* and *England,* plaintiffs here were not seeking an interpretation of a state statute as a predicate to a constitutional challenge. Quite the contrary, plaintiffs admit in their brief that "Massachusetts law [in this case] was clearly established..." at the time of the state court action. Thus, the present case is not one in which the doctrine of abstention could properly have been invoked. Plaintiffs were not entitled to avail themselves of the rule in *England.* Plaintiffs were not shunted to the state court; they went there on their own in order to seek relief that they could get only there. That they also would like relief under federal law gives them no right to split their cause of action and harass the defendants with a marathon course of litigation.

■ Because plaintiffs could have raised the instant federal claims in their prior state court action, I find this action barred by the doctrine of *res judicata.*

The plaintiffs conceded in oral argument that denial of a common victualler's license does not raise a federal issue.

Accordingly, the defendants' motion to dismiss plaintiffs' complaint is ALLOWED.

■ While plaintiffs' claims ultimately failed, I do not find them so lacking in merit as to constitute an abuse of process. Accordingly, plaintiffs' motion to dismiss defendant's counterclaim is ALLOWED.