James CHONGRIS and George
Chongris, Plaintiffs,
Appellants,

v.

BOARD OF APPEALS OF the TOWN
OF ANDOVER, et al., Defendants,
Appellees.

No. 86–1761.

United States Court of Appeals,
First Circuit.

Argued Jan. 5, 1987.

Decided Feb. 12, 1987.

Arthur H. Goldsmith, Boston, Mass., for plaintiffs, appellants.

Gerald F. Blair with whom Avery, Dooley, Post & Avery, Boston, Mass., was on brief for defendants, appellees.

Suzanne E. Durrell, Asst. Atty. Gen., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief for intervenor.

Before BOWNES, Circuit Judge, ROSENN,* Senior Circuit Judge, and SELYA, Circuit Judge.

SELYA, Circuit Judge.

James Chongris and George Chongris, brothers by birth and appellants by choice, felt mistreated at the hands of the powers-that-were in the suburban municipality of Andover, Massachusetts (Town). After they instituted a routine state court appeal of a municipal edict which stripped them of a building permit, *see generally Chongris v. Board of Appeals of Andover*, 17 Mass. App. 999, 459 N.E.2d 1245 (1984) (*Chongris I*), they sought to give the Town fathers their gruel by prosecuting a civil rights action in federal district court under 42 U.S.C. § 1983. They named as defendants the Town, its zoning board (Board), the individual members of the Board, the councillors of the Town's elected governing body (Selectmen), and others no longer before the court. The appellants challenged conduct attributable to the municipal de-

*Of the Third Circuit, sitting by designation.

1. Although the district court rested its decision on the doctrine of res judicata, *see Chongris II*, 614 F.Supp. at 1002, we elect not to reach that issue but to affirm the judgment on the independently sufficient ground that plaintiffs' complaint failed to state a cognizable federal claim upon which relief could be granted. Fed.R. Civ.P. 12(b)(6). There is ample precedent for this sort of fluctuation. *See Casagrande v. Agor-*

fendants as well as the validity of certain state zoning statutes, *viz.*, M.G.L. ch. 40A, §§ 11, 15 and 17. The district court eventually dismissed the suit under Fed.R. Civ.P. 12(b)(6). *See Chongris v. Board of Appeals of Andover*, 614 F.Supp. 998 (D.Mass.1985) (*Chongris II*). The plaintiffs appealed. We affirm the dismissal.[1]

I. BACKGROUND

Because this appeal follows a district court's dismissal of the action under Rule 12(b)(6), we accept the well-pleaded factual averments of the latest (second amended) complaint as true, and construe these facts in the light most flattering to the plaintiffs' cause. *Kugler v. Helfant*, 421 U.S. 117, 125–26 & n. 5, 95 S.Ct. 1524, 1531–32 & n. 5, 44 L.Ed.2d 15 (1975); *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972) (per curiam). We exempt, of course, those "facts" which have since been conclusively contradicted by plaintiffs' concessions or otherwise, and likewise eschew any reliance on bald assertions, unsupportable conclusions, and "opprobrious epithets." *See Snowden v. Hughes*, 321 U.S. 1, 10, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944).

The seeds of the current dispute were sown in August of 1979, when the Town's Building Inspector issued a permit for extensive renovations to convert a building owned by George Chongris to a Dunkin Donuts franchise. James Chongris then filed an application with the Selectmen to secure the common victualler's license which would be required for operation of the donut shop. *See* M.G.L. ch. 140, § 6. Shortly thereafter, a neighborhood group known as the Friends of Shawsheen Village Association (Friends) registered an ob-

*itsas*, 748 F.2d 47, 48 n. 1 (1st Cir.1984) (per curiam); *Roy v. City of Augusta*, 712 F.2d 1517, 1520 n. 3 (1st Cir.1983). *Cf. Cloutier v. Town of Epping*, 714 F.2d 1184, 1188 (1st Cir.1983). As the appellants themselves have said, "the ultimate issue in this appeal ... is whether plaintiffs have stated, if not established, a civil rights claim for compensatory relief." Reply Brief for Plaintiffs/Appellants at 14. We simply take them at their word.

jection to the issuance of the building permit. Additionally, the Friends sought to appeal the action of the Building Inspector pursuant to M.G.L. ch. 40A, §§ 8 and 15. Their petition to the Board rested upon four grounds: insufficient setback; insufficient parking; improper use of "club service"; and violation of the zoning bylaws regarding business signage.

The Board advertised a public hearing which was held on November 1, 1979. Although appellants challenge the constitutional adequacy of the notice they received, *see post*, it is undisputed that James Chongris attended the hearing with counsel and presented arguments in favor of the proposed conversion of the building. Indeed, they convinced the Board to take a view of the premises before acting on the appeal. On November 13, 1979, following the view—which plaintiffs claim that they were unable to attend because of the Board's failure to advise them of the schedule in a timely fashion—the Board voted unanimously to reverse the decision of the Building Inspector and to revoke the permit. Soon thereafter, the plaintiffs filed suit in state superior court under M.G.L. ch. 40A, § 17, seeking review of the Board's action.[2] And, the Selectmen took no significant ac-

tion in respect to the victualling license, "tabling" the application.

Some eleven months after their zoning appeal had been instituted in the superior court and while it was still pending (although lying fallow), the plaintiffs filed this action in the federal district court on October 14, 1980. The complaint averred that the Friends,[3] the Board, and the Town, together with and through the individual defendants, had deprived the plaintiffs of property (*i.e.*, the building permit) without compensation and/or due process of law. In addition, the plaintiffs alleged that the refusal of the Selectmen to act on the application for the conditional common victualler's license (or alternatively, to explain their refusal to act) likewise denied them property without due process.

In February of 1981, plaintiffs filed in both the state and federal forums a so-called "reservation" of their federal claims purporting to save adjudication of all pertinent federal law questions for the federal district court. In so doing, the plaintiffs relied upon the Supreme Court's decision in *England v. Louisiana Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), vouchsafing that *England* stood as authority for this procedure.[4]

---

**2.** M.G.L. ch. 40A, § 17 provides in pertinent part as follows:

Any person aggrieved by a decision of the board of appeals ... may appeal to the superior court department for the county in which the land concerned is situated ..., by bringing an action within twenty days after the decision has been filed in the office of the city or town clerk.... Notice of the action with a copy of the complaint shall be given to such city or town clerk so as to be received within such twenty days. The complaint shall allege that the decision exceeds the authority of the board or authority, and any facts pertinent to the issue, and shall contain a prayer that the decision be annulled. There shall be attached to the complaint a copy of the decision appealed from, ....

*   *   *   *   *   *

Costs shall not be allowed against the board ... unless it shall appear to the court that the board ... in making the decision appealed from acted with gross negligence, in bad faith or with malice.

*   *   *   *   *   *

All issues in any proceeding under this section shall have precedence over all other civil actions and proceedings.

**3.** The original complaint named the Friends, along with two functionaries (Sellers, the president of the Friends, and Terranova, the attorney and principal spokesman for the group) as defendants and coconspirators. This trio of respondents were eventually dropped as parties. They are no longer in the case.

**4.** In view of the approach which we find dispositive in this case, protracted discussion of the workings and extent of the *England* doctrine would serve no useful purpose. We note, however, that the district court has ably reviewed the pertinent precedent. *See Chongris II*, 614 F.Supp. at 999–1002. It suffices for today to acknowledge *England*, 375 U.S. at 417–18, 84 S.Ct. at 465–66, as creating a specialized mechanism whereby, in a small group of cases, a party who has been involuntarily "shunted from federal to state courts," *id.* at 418, 84 S.Ct. at 466, may nonetheless preserve his right to a federal court determination of essentially federal claims.

There is nothing in the record before us to suggest that this reservation was contemporaneously called to the attention of any judge, federal or state.

On December 29, 1982, the state superior court annulled the Board's revocation edict, holding that the Friends lacked standing to mount the initial challenge. The Massachusetts Appeals Court subsequently upheld the superior court's decision, *see Chongris I,* and the building permit was restored. Notwithstanding their state court triumph and the fact that they were able to obtain a later order of the Massachusetts Appeals Court awarding them $1782 in fees and double costs, the plaintiffs' thirst to punish the municipal defendants was unslaked. They continued to press their claims in the federal court. In March 1985, the plaintiffs filed a second amended complaint which, in addition to renewing the bread-and-butter civil rights claims and updating the facts to reflect more recent history, placed in issue the constitutionality of certain state statutes. Notice of this initiative was served on the Commonwealth's Attorney General, *see* M.G.L. ch. 231A, § 8, who intervened.

A spate of concentrated activity followed: the plaintiffs moved for summary judgment, the defendants filed dismissal motions, and the intervenor sought dismissal as well. On July 30, 1985, the district court allowed the motions to jettison the suit. The court found the plaintiffs' purported *England* reservation to be ineffective, and held that the federal claims—all of which, the district court believed, could have been litigated in the earlier state court proceeding—were barred under principles of res judicata. *See Chongris II,* 614 F.Supp. at 1001–02. Nothing daunted, the plaintiffs unsuccessfully moved for reconsideration, and thereafter docketed this appeal.

## II. BATTLEGROUND

The second amended complaint, structurally convoluted and verbose as it is, presents difficulties for reasoned analysis. Yet, after what wheat can be found is separated from the conspicuous quantities of chaff, the pleading can be viewed as fomenting three discrete sets of claims: those which challenge the actions of the Board in revoking the building permit, those which indict the Selectmen for refusing to issue the victualler's license, and those which attack the facial validity of the state statutes.[5] This triumvirate is fastened together by at least one common thread: we find that the plaintiffs, on all three theories, fail to state federally cognizable causes of action.

Before proceeding to a discussion of particular issues, however, one generic point deserves clarification. The plaintiffs have mixed and matched their assorted claims in a rather haphazard manner. George Chongris owned the premises and was the named applicant for the building permit; James, who appears to have been an employee at will of his brother, had no real interest in the permit in his own right. Conversely, James was the sole applicant for the victualler's license, and George's standing with regard to that aspect of the case is tenebrous at best. Nevertheless, the second amended complaint draws no distinctions: James and George sponsor all claims jointly and severally. We need not dwell on this dishevelment. Inasmuch as we conclude that neither plaintiff has asserted any actionable claim for relief, we will overlook the sloppiness of the pleadings and treat the brothers as if they shared in common any entitlements which existed.

### A. *The Building Permit*

We turn initially to the allegation that the Board's rescission of the building per-

---

**5.** The plaintiffs also named the Town as a defendant. Yet, they offered no facts whatever which could attach liability to that entity under 42 U.S.C. § 1983. It is firmly settled—although the plaintiffs stubbornly insist to the contrary—that the civil rights statutes impose no responde-

at superior liability in circumstances such as these. *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981); *Monell v. Department of Social Services,* 436 U.S. 658, 691–94 & n. 58, 98 S.Ct. 2018, 2036–38 & n. 58, 56 L.Ed.2d 611 (1978).

mit was unconstitutional. The plaintiffs seem to say that the Board denied them the procedural due process guaranteed by the fourteenth amendment to the federal Constitution in three different ways. First, they argue that the notice of the hearing on the Friends' appeal was infirm in failing to spell out in so many words that revocation of the building permit was being considered. Second, they contend that the protocol itself was fatally flawed and afforded them insufficient opportunity meaningfully to be heard. And third, the plaintiffs urge that the revocation—ordered, as it was, in connection with the appeal of a party subsequently found to lack standing under Massachusetts law—constituted an independent violation of their federally protected rights.

The two essential elements of an action under 42 U.S.C. § 1983 are, of course, (i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981); *Chiplin Enterprises, Inc. v. City of Lebanon*, 712 F.2d 1524, 1526–27 (1st Cir.1983). Although the first requirement is met in this case, our painstaking excursion through the prolixities of the second amended complaint has left us utterly unable to locate any constitutional right of which the plaintiffs were deprived when the Board revoked the building permit.

■ Assuming for present purposes that the plaintiffs enjoyed a tenable property interest in the building permit once it had originally issued, *see Cloutier v. Town of Epping*, 714 F.2d 1184, 1191 (1st Cir.1983), they nevertheless have failed to demonstrate that they received less than their constitutional due. The Supreme Court has repeatedly observed that not every deprivation of property attributable to state action sinks to the depths of a fourteenth amendment violation. *E.g., Parratt*, 451 U.S. at 537, 101 S.Ct. at 1913. Where state procedures—though arguably imperfect—provide a suitable form of predeprivation

hearing coupled with the availability of meaningful judicial review, the fourteenth amendment guarantee of procedural due process is not embarrassed. *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 829–30 (1st Cir.), *cert. denied*, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982). And, as an analysis of each of the three segments of the plaintiffs' building permit lament will bear out, the procedures employed by the Board in this instance easily pass constitutional muster.

■ 1. *Notice.* The claim that the Board's notices of the hearing on the Friends' appeal were constitutionally deficient—because they failed to inform the appellants explicitly that revocation of the building permit was being considered—is hollow at its core. It is important to note that the appellants do not assert that they received *no* notice. The hearing was held on November 1, 1979. The plaintiffs concede that George Chongris, the owner of the premises, received notice by mail well in advance of that date. They likewise acknowledge that in mid-October notice was twice given by publication in a local newspaper of general circulation. The announcements complied fully with M.G.L. ch. 40A, § 11. Each notice apprised all concerned of the time, date, and place of the hearing, the identity of the petitioner, the location of the subject premises, and the general nature of the action. In addition, the Friends' underlying petition was filed in the Town Clerk's office as early as August 30, 1979. It was available for public inspection for over two full months before the hearing.

As required by M.G.L. ch. 40A, § 15, the petition itself spelled out, in the clearest terms imaginable, the grounds upon which it rested. *See ante* at 38. It was a direct and unambiguous objection to the Building Inspector's issuance of the permit. It specifically identified the zoning bylaws which, in the Friends' view, conflicted with the plaintiffs' project. The record reflects that at least one of the plaintiffs, accompanied by counsel, met with the Building Inspector to review the likely bases of the

anticipated opposition a day or two before the hearing. There was never any doubt but that reversal of the Building Inspector's decision (and thus, by necessary implication, revocation of the permit) was the objectors' desired remedy. And, given that such a remedy fell within the purview of the Zoning Board's jurisdictional authority under M.G.L. ch. 40A, § 14—a fact of which plaintiffs (who were represented throughout by counsel) had constructive knowledge, cf. Cappuccio v. Zoning Board of Appeals of Spencer, 398 Mass. 304, 313, 496 N.E.2d 646, 651 (1986)—the appellants' belated claim that they were "surprised" by the revocation is plainly disingenuous. To be sure, they may have been "surprised" that they lost the permit (the Building Inspector, after all, was clearly on their side)—but the suggestion that they were unaware that revocation was a possible outcome of the Friends' petition and the November 1 hearing is as preposterous as it is incredible.

Due process is a flexible concept. Insofar as it may be deemed to require prior notice of certain kinds of state action, it exacts not some formulary incantation, but notice which is reasonably calculated to impart useful and pertinent information under the circumstances then obtaining. Substance governs over form. So long as a "T" is clearly portrayed as a "T," the Constitution does not mandate that it be crossed in some mythic fashion. In this instance, the notice afforded to the plaintiffs was timely, informative, and accurate. More to the point, we find it to have been constitutionally ample.

■ 2. *Opportunity to be Heard.* The appellants' protestation that they were not given an adequate chance to be heard at the proceeding which ultimately resulted in revocation of the building permit is belied by, inter alia, the attachments to the complaint. Specifically, the plaintiffs contend that the Board's failure to inform them of their right to counsel and to allow them to cross-examine witnesses at the hearing transgressed their entitlement to procedural due process. Yet, they cannot meaningfully complain that they were unaware of their right to counsel, for the record plainly reveals that an attorney represented them at the November 1, 1979 hearing and was (along with James Chongris himself) afforded an opportunity to argue in opposition to the Friends' appeal. The mere fact that the Board may not have sent an engraved invitation to the appellants suggesting that their lawyer would be welcome strikes us as altogether immaterial. What matters, from a constitutional perspective, is that the plaintiffs apparently knew that they had a right to counsel, exercised that right, and encountered no interference from the Board.

■ The remaining aspect of the assault on the hearing protocol is equally jaundiced. George Chongris, despite having received timely written notice, chose not to attend the session. As we have mentioned, James Chongris and the plaintiffs' attorney appeared and spoke. The Building Inspector explained to the Board why he felt the conversion should go forward. The appellants observe, correctly, that no cross-examination occurred—but they have cited no authority to suggest that they were constitutionally entitled to cross-question witnesses at a hearing of this sort. Quite the contrary is true; our cases make clear that no such forensic devices are necessary to satisfy the imperatives of procedural due process in land-use matters. In *Cloutier,* we held that "[f]ull judicial-type hearings are not required when local boards engage in the quasi-legislative task of granting or revoking zoning or similar types of permits." 714 F.2d at 1191. And in *O'Neill v. Town of Nantucket,* 711 F.2d 469, 471–72 (1st Cir.1983), we flatly rejected a call for mandatory cross-examination at this type of meeting, noting that "a zoning or quasi-zoning question does not constitutionally require anything like a judicial hearing." These truths are especially self-evident where, as here, the state's courts were available to provide post-deprivation review. *See Raskiewicz v. Town of New Boston,* 754 F.2d 38, 44 (1st Cir.) ("where ... the state offers a panoply of adminis-

trative and judicial remedies, litigants may not ordinarily obtain federal court review of local zoning and planning disputes by means of 42 U.S.C. § 1983"), *cert. denied,* —— U.S. ——, 106 S.Ct. 135, 88 L.Ed.2d 111 (1985); *Roy v. City of Augusta,* 712 F.2d 1517, 1523 (1st Cir.1983) (similar). So, omitting cross-examination at a zoning hearing or kindred event does not amount to a denial of due process in violation of the fourteenth amendment.[6]

We do not pretend that we have exhaustively catalogued all of the ostensible hearing-related shortcomings to which the appellants have alluded. They claim, for example, that they were shortweighted in their efforts to introduce documents at the hearing and that they received overly brief notice when the Board viewed the premises. We have combed the record carefully, however, and we are convinced that it would serve no useful purpose to deal in the minutiae of the appellants' plaint. We are satisfied that, as a matter of law, taking all of the plaintiffs' *factual* allegations—as opposed to their unsupported conclusions and outlandish legal theories—as proven, the hearing process which the Board employed was fully consistent with what the federal Constitution demanded.

■ 3. *Standing.* The last of the plaintiffs' remonstrances against the Board reduces to the curious contention that, by acting upon the appeal of a party later found to lack standing under state law, the Board *ipso facto* deprived plaintiffs of property without due process of law. Such a proposition cannot survive scrutiny.

The Supreme Court has noted that not all violations of state statutes infringe consti-

tutional rights. *Paul v. Davis,* 424 U.S. 693, 700, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). As we observed in *Creative Environments,* 680 F.2d at 832 n. 9, "property is not denied without due process simply because a local planning board rejects a proposed development for erroneous reasons or makes demands which arguably exceed its authority under the relevant state statutes."[7] The case at bar blends nicely into the *Creative* environment.

Viewing the matter most hospitably to the plaintiffs, as Rule 12(b)(6) necessitates, we are nevertheless unable to ascribe any constitutional deprivation to the Board's decision. To be sure, the Board was wrong; it misperceived the law and recognized the Friends when it should have discarded the petition because the neighborhood association lacked the standing required under state law. But, the mere fact that a municipal board zigged when it should have zagged, without more, will not serve to engage the heavy-duty machinery of the Civil Rights Acts. Error by a zoning board is regrettable, but not federally actionable in and of itself. As we have said, a "conventional planning dispute—at least when not tainted with fundamental procedural irregularity, racial animus, or the like— ... does not implicate the Constitution." *Creative Environments,* 680 F.2d at 833. *Accord Chiplin Enterprises,* 712 F.2d at 1528 (outright violation of state law by municipal actors does not automatically raise federal claim); *Roy,* 712 F.2d at 1523 (same); *Sucesion Suarez v. Gelabert,* 701 F.2d 231, 233 (1st Cir.1983) (state agency overstepping its bounds in denying sand

---

**6.** Some frosting adorns this particular piece of cake: there is nothing in the record before us, by way of averment or otherwise, to indicate that the plaintiffs ever sought to cross-examine any witness or requested that the Board cede them this "right."

**7.** We noted further that:

[W]ere such a theory to be accepted, any hope of maintaining a meaningful separation between federal and state jurisdiction in this and many other areas of law would be jettisoned. Virtually every alleged legal or proce-

dural error of a local planning authority or zoning board of appeal could be brought to a federal court on the theory that the erroneous application of state law amounted to a taking of property without due process. Neither Congress nor the courts have, to date, indicated that section 1983 should have such a reach.

*Creative Environments,* 680 F.2d at 831. *Accord Quinn v. Bryson,* 739 F.2d 8, 9 (1st Cir.1984). We unequivocally reaffirm those sentiments today.

extraction permit does not per se equate to § 1983 claim).

We have previously held in similarly postured cases that even abridgments of state law committed in bad faith do not necessarily amount to unconstitutional deprivations of due process. *E.g., Chiplin Enterprises,* 712 F.2d at 1528; *cf. Roy,* 712 F.2d at 1523. And in this case, the appellants have advised us that they abjure any suggestion of malice, ill will, or corrupt motive on the part of the Board. There is simply no inkling here of the type of egregious official behavior which could conceivably work a breach of the due process clause. Having properly pursued the route to redress which the Commonwealth provided in its courts, and having through that avenue secured the restoration of the very property of which they had been erroneously deprived, the Chongris brothers cannot plausibly claim that they were denied the process which was due them under the Constitution.

### B. *The Victualler's License*

■ The appellants' assertions against the Selectmen have even less nutritive value than the charges levied against the Board. The Chongris brothers contend that there has been a bite taken out of procedural due process by reason of the Selectmen's failure (in 1979 and thereafter) to issue—or take any action on, other than to table—a conditional common victualler's license to which plaintiffs felt entitled under M.G.L. ch. 140, § 6. In serving up this bill of fare, the appellants concocted nothing upon which relief could properly have been granted below.

It is hornbook law that, to fashion a procedural due process claim under the fourteenth amendment, the plaintiffs must have possessed some constitutionally cognizable interest—in the present circumstances, a protectible property interest. *Parratt,* 451 U.S. at 536, 101 S.Ct. at 1913; *Board of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). It is likewise a black-letter certainty that property rights, while protected by

the federal Constitution, are creatures of state law. *See Bishop v. Wood,* 426 U.S. 341, 344 n. 7, 96 S.Ct. 2074, 2077 n. 7, 48 L.Ed.2d 684 (1976); *Roth,* 408 U.S. at 577, 92 S.Ct. 2709. We thus look to the provisions of Massachusetts law anent victualler licensure to determine if these plaintiffs had any constitutionally significant interest in the hoped-for conditional license which they say that the Selectmen refused to issue to them.

M.G.L. ch. 140, § 2 tells us that "[l]icensing authorities *may* grant licenses to persons to be innholders or common victuallers." (emphasis supplied). The statute goes on to state that it "shall not require the licensing authorities to grant either of said licenses if, in their opinion, the public good does not require it." *Id.* And, M.G.L. ch. 140, § 6 provides in relevant part that:

A common victualler's or innholder's license *may* be issued to an applicant therefor if at the time of his application he has upon his premises the necessary implements and facilities for cooking, preparing and serving food.... An applicant for [such] a license ..., proposed to be exercised upon premises which have not been equipped with fixtures or supplied with necessary implements and facilities for cooking, preparing and serving food ... shall file with the licensing authorities a plan showing the location of counters, tables, ranges, toilets and in general the proposed set-up of the premises ... together with an itemized estimate of the cost of said proposed set-up ...; and thereupon the licensing authorities *may* grant a common victualler's ... license ... upon the condition that such license shall issue upon the completion of the premises according to the plans and estimate submitted,.... (emphasis supplied)

As the foregoing provisions make abundantly clear, the issuance of a conditional common victualler's license is altogether permissive. The appellants cannot possibly be said to have enjoyed an entitlement to such a license merely because they sub-

mitted a timely application for one. This has been the law of Massachusetts for, at least, half a century, when the Commonwealth's Supreme Judicial Court declared that:

> The licensing authorities are not now required to grant any licenses to common victuallers. Whether any such licenses shall be granted and, if any, the number to be granted rest in the sound judgment of the licensing board as to the demands of the public welfare in the respective communities.

*Liggett Drug Co. v. Board of License Comm'rs*, 296 Mass. 41, 50, 4 N.E.2d 628, 634 (1936).

Accordingly, the appellants possessed no property interest in the conditional common victualler's license such as would entitle them to the prophylaxis of procedural due process or to relief under 42 U.S.C. § 1983. They had, at best, a mere unilateral expectation of receiving such largesse. That being so, their federal claims against the Selectmen are bootless.[8]

### C. *The State Statutes*

The plaintiffs launch their last constitutional missile against the facial validity of portions of the Massachusetts zoning statutes. Insofar as they bombard the sufficiency of the form of notice required under M.G.L. ch. 40A, § 11 and the adequacy of the protocol for the hearing which was held pursuant to M.G.L. ch. 40A, § 15, they do nothing more than recostume some of the constitutional claims leveled against the practices of the Board—claims which we have already rejected as unfounded. *See ante* Part II(A). These frayed arguments take on no added allure in the garb of challenges to the constitutionality of the statutes themselves. On the basis of the

reasons which we have previously articulated, we dismiss them out of hand.

■ The appellants' last strike is new to our treatment of the issues in the case—yet we need not linger long in considering it. The plaintiffs urge that the post-deprivation remedies accorded them were constitutionally deficient. Specifically, they argue that M.G.L. ch. 40A, § 17, the pertinent text of which is set forth in the margin, *see ante* n. 2, fails to allow them appropriate compensation for their losses. And, we assume that such remuneration is indeed beyond their reach as a matter of state law, since they admit that the Board did not act "with gross negligence, in bad faith or with malice." *See id.* Because they are given no state law damages remedy for the good faith—but erroneous—revocation of the permit, the appellants contend that this means their "property" was "taken" without recompense. They conveniently overlook the ironic fact that the very statute which they now revile was itself the vehicle through which they regained the permit, and insist that the Constitution entitles them to a monetary anodyne.

The plaintiffs' fundamental assumption has been entirely discredited, however, by *Parratt* and its progeny. In *Parratt*, the Court held that a convict whose property was lost by prison officials could not sue for damages under 42 U.S.C. § 1983 because state tort law was adequate to redress the grievance. "Although the state remedies may not provide ... all the relief which may have been available ... under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process." *Parratt*, 451 U.S. at 544, 101 S.Ct. at 1917. The Court reaffirmed this principle in *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct.

---

**8.** Although we need not proceed further, the case against the Selectmen points up the emptiness of the plaintiffs' federal grievances. During the period when the Selectmen are accused of having engineered the "deprivation" of the victualler's license, construction of the Dunkin Donuts restaurant had not begun. For virtually all of that period, the building permit stood revoked. Thus, even if the Chongrises had the victualler's license, it would have been a meaningless piece of paper. The restaurant from which food was to have been dispensed did not exist. Here, as in *Cloutier*, 714 F.2d at 1193 n. 9, there is "nothing in the record to suggest a triable issue of fact on the question whether the plaintiffs suffered [any] damages" from the interdicted action.

3194, 3203, 82 L.Ed.2d 393 (1984), in the context of intentional property deprivations. That state law procedures may not allow one to recover "the full amount which he might receive in a § 1983 action is not ... determinative of the [constitutional] adequacy of the state remedies." *Id.* at 535, 104 S.Ct. at 3204.

Our decisions, both before and after *Parratt* and *Hudson,* are harmonious with these tenets. *See, e.g., Alton Land Trust v. Town of Alton,* 745 F.2d 730, 732–33 (1st Cir.1984) (rebuffing claim for damages under the due process and takings clauses where denial of subdivision application led to loss of subject property by foreclosure); *Citadel Corp. v. Puerto Rico Highway Authority,* 695 F.2d 31, 33–34 (1st Cir.1982) (damages not available under 42 U.S.C. § 1983 for excessive state land-use regulation), *cert. denied,* 464 U.S. 815, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983); *Pamel Corp. v. Puerto Rico Highway Authority,* 621 F.2d 33, 35–36 (1st Cir.1980) (same). The plaintiffs here are no differently situated insofar as state law remedies than were the litigants who, precedent teaches, failed to state constitutional claims in *Cloutier, Chiplin Enterprises,* and *Creative Environments,* all *supra.* The failure of the Massachusetts statutory scheme to confer a more generous damages entitlement falls well within the range of constitutionally acceptable choices which the Commonwealth, in our federalist system, is allowed to make. The contention that M.G.L. ch. 40A, § 17 runs afoul of the takings clause is fanciful. *See Alton Land Trust,* 745 F.2d at 732–33; *Roy,* 712 F.2d at 1523.

### D. *The Pending Motions*

During the currency of this appeal, the appellees moved for the imposition of attorneys' fees and double costs under Fed.R. App.P. 38. They branded the entire proceeding as frivolous. The appellants, not to be outdone, cross-moved for the fees involved in defending against what they deemed to be a capricious request for sanctions.

The appellees' motion presents, we think, a relatively close question. The fact that we elected not to consider the res judicata ground on which the district court dismissed the action is not any indication that we entertained substantial qualms about the district court's holding. *Accord Casagrande v. Agoritsas,* 748 F.2d at 48 n. 1 ("Although we might well agree with the district court that dismissal on the complaint is warranted because the district court lacks jurisdiction to hear the case, we choose to affirm its judgment on an independent ground.") (citations omitted). We reasoned, instead, that the case was sufficiently clear in other respects that the temptation gratuitously to enter the *England* thicket, *see ante* n. 4, should be avoided. This course of action seemed especially inviting because the district court, on the res judicata point, did not have the benefit of our opinion in *Calderon Rosado v. General Electric Circuit Breakers, Inc.,* 805 F.2d 1085 (1st Cir.1986), and thus gave no consideration to acquiescence as a preclusory bar to invocation of a defense premised upon claim-splitting. *See id.* at 1087. *See also Diversified Mortgage Investors v. Viking General Corporation,* 16 Mass.App. 142, 450 N.E.2d 176, 179–80 (1983).[9] Since we have eschewed detailed review of the district court's rationale, however, it becomes more difficult for us, in fairness, to characterize the plaintiffs' appeal as frivolous. *See Natasha, Inc. v. Evita Marine Charters, Inc.,* 763 F.2d 468, 472 (1st Cir.1985) (appeal "frivolous" when result is obvious or all arguments are wholly meritless).

■ Although this is a borderline case, we exercise our discretion under Appellate Rule 38 to deny the appellees' motion for fees and double costs. As the prevailing parties, however, they remain, entitled to ordinary costs. The appellants' cross-motion deserves scant comment; it shows

---

9. We express no opinion on whether or not the appellees acquiesced in the dual filings here, or on the effect (if any) of such acquiescence. We merely remark that this issue, through no fault of the district court, was not adequately explored below.

signs of confusing fantasy with reality, and is denied.

## III. FOREGROUND

We recapitulate briefly. Although the second amended complaint is a massive document—it comprises 32 pages, includes some 125 separate paragraphs, and incorporates by reference a host of documents—a linguistic avalanche cannot serve to make out a constitutional claim where none exists. We have reviewed the tens of thousands of words and found nothing of federally cognizable substance. We have considered all of the plaintiffs' many arguments, including but in no way limited to those discussed above, and have found them to be entirely wanting. No matter how assiduously Aladdin's Lamp is rubbed, the genie of federal jurisdiction does not appear: taking the well-pleaded facts and the reasonable inferences therefrom in the light most favorable to the plaintiffs, no claim is stated against any defendant on which the district court could have granted relief.

We can understand, if not appreciate, the appellants' frustration. As they view the mise-en-scene, it is long since past "time to make the donuts"—but remodelling of the facility was stalled for several years while the battle over the building permit was waged. Yet, as we have repeatedly cautioned, the expenditure of time and money is "[a]n unfortunate but unavoidable aspect of all litigation." *Roy*, 712 F.2d at 1523. The plaintiffs have little choice but to accept that reality. They cannot be allowed to prolong their ill-conceived attempts to punish the Town, or the Board, or municipal officials in general for simply doing their jobs—even if tasks were imperfectly performed. The Civil Rights Acts cannot be used as a rack upon which every disappointed developer can stretch a community that fails to roll out the red carpet for him.

For these reasons, the judgment of the district court is

*Affirmed.*

* Released for Publication Feb. 11, 1987.