February 16, 1993
UNITED STATES COURT OF APPEALS
For The First Circuit

No. 92-1805

RESOLUTION TRUST CORPORATION, ETC.,

Plaintiffs, Appellees,

v.

DANIEL M. DRISCOLL, JR.,
INDIVIDUALLY AND AS HE IS TRUSTEE OF
QUINAQUISSET REALTY TRUST, ET AL.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Breyer, Chief Judge,

Higginbotham, Senior Circuit Judge,*

and Boudin, Circuit Judge.

J. Daniel Lindley with whom Peter Antell and Antell & Associates

were on brief for appellants.

James H. Wexler with whom Bennett H. Klein and Kotin, Crabtree,

and Strong were on brief for appellees.

February 16, 1993

*of the Third Circuit, sitting by designation.

BOUDIN, Circuit Judge. This appeal is one branch of a

complex commercial matter still pending in the district

court. The case derives from a set of entangled transactions

that have been further complicated by an intervening bank

failure. Perceiving reasons for a prompt resolution of

claims against one party, the district court entered a

separate final judgment as to those claims, and this appeal

followed. We affirm.

I.

In the mid-1980's, the Fox Run Realty Trust ("Fox Run")

set out to develop a residential complex in Mashpee,

Massachusetts, known as "Willowbend." In December 1986, the

Quinaquisset Realty Trust ("Quinaquisset") conveyed to Fox

Run 152 acres of land adjoining the Fox Run holding, allowing

the project to be expanded. In exchange, Quinaquisset

received a large payment and the promise of a number of house

lots and of condominiums or permits for them after

subdivision approval. Fox Run's obligations to Quinaquisset

were secured by a first mortgage on the 152 acres. At the

same time, Sentry Federal Savings Bank ("Sentry") loaned Fox

Run $13 million to finance Willowbend, taking back a note

secured by a mortgage on Willowbend, subordinated as to the

152 acres.

In October 1987, Fox Run conveyed to Quinaquisset 20

house lots and the rights to 22 or 23 condominium permits (we

-2-

are given different numbers in the briefs). The Quinaquisset

mortgage on the 152 acres was discharged. Fox Run then

repurchased the permit rights for cash and an unsecured $1.1

million note to Quinaquisset. Then, in April 1989,

Quinaquisset borrowed $950,000 from Sentry, giving Sentry a

note and depositing with it as collateral the earlier $1.1

note reflecting Fox Run's debt to Quinaquisset. At this

point, Fox Run was indebted to Quinaquisset and both were

indebted to Sentry.

In September 1989 Fox Run fell into default on payments

to Sentry, and Sentry began to foreclose on Willowbend. In

April 1990, Sentry and Fox Run entered into a settlement

agreement; Fox Run agreed to convey title in Willowbend to

Sentry or to Evergreen Holding Company ("Evergreen"), a

wholly owned subsidiary of Sentry, and Sentry agreed not to

claim under the note against two individuals who had

guaranteed Fox Run's debt to Sentry. Sentry's mortgage on

Willowbend, however, was not discharged; rather Evergreen

took the property subject to Sentry's power to sell pursuant

to the mortgage.

In the meantime, it appears that Fox Run had ceased in

August 1989 to make payments to Quinaquisset on the $1.1

million note payable to Quinaquisset but held by Sentry as

collateral. In November 1989, Quinaquisset fell behind in

payments on its own $950,000 note to Sentry. In May 1990,

-3-

Quinaquisset was in default, and Sentry brought suit on the

$950,000 note in Middlesex Superior Court, claiming not only

against Quinaquisset's trustee, Daniel M. Driscoll, Jr., but

also against a number of individuals who had guaranteed the

note ("the guarantors"). For simplicity, we will refer

collectively to the trustee and guarantors, appellants in

this court, as "Quinaquisset."

Sentry also proceeded with efforts to foreclose the

Willowbend mortgage, seeking to sell both the property and

the associated rights to the condominium permits that Fox Run

had transferred to Quinaquisset and then reacquired. When

Quinaquisset threatened to delay the mortgage sale by

litigation, Sentry and Quinaquisset entered into an agreement

on June 22, 1990. That agreement (in the first paragraph)

released Sentry's mortgage on the 20 house lots previously

conveyed to Quinaquisset; and Quinaquisset, subject to

certain reservations of rights described in the margin,

agreed (in the second paragraph) not to enjoin the

foreclosure sale "or to take any further action subsequent

thereto with reference to the validity of said foreclosure or

the [m]ortgages relating thereto."1 The foreclosure sale

1This promise was qualified in the same paragraph by
this language: "provided, however, that Quinaquisset reserves
its rights, claims and remedies, if any, relating to (i)
Sentry's dealings with [the two individuals who had
guaranteed Fox Run's note to Sentry], and (ii) Sentry's
dealings with Quinaquisset regarding the [m]ortgage being
released . . . ." In the third paragraph, the parties

-4-

proceeded, there were multiple bidders, and at the sale

Evergreen acquired Willowbend.

In September 1990, Sentry failed and the Resolution

Trust Company ("RTC") became its receiver. The RTC created a

new bank entity; the RTC became conservator of the new

entity, which received various Sentry assets including

Evergreen. The RTC, as receiver for Sentry, removed to the

district court the litigation in Middlesex Superior Court

brought by Sentry against Quinaquisset to recover on the

$950,000 note.

II.

On May 22, 1991, Quinaquisset filed a new pleading in

the district court action, including for the first time

Evergreen, now named as a third party defendant.

Quinaquisset's amended consolidated answer, counterclaim and

third party complaint is one of those documents that portend

a lot of litigation. Claims were directed against the RTC as

receiver for Sentry and conservator of the new entity,

against Fox Run's trustees, and against Evergreen; there were

12 counts, alleging multiple wrongs and numerous legal

theories; and the relief sought included recision of various

transactions, imposition of constructive trusts, and damages.

agreed, "with the exception of the foregoing, to reserve
without prejudice their rights, claims or remedies" in the
Middlesex Superior Court action.

-5-

As only the claims against Evergreen are at issue on

this appeal, we confine ourselves to the procedural steps and

rulings concerning it. Describing the claims against

Evergreen is not easy because very little in the May 22,

1991, pleading relates directly to it. There are specific

allegations against others, notably Sentry, including claims

of misrepresentation and trickery in the transactions that

led to Quinaquisset's discharge of its mortgage, the

reconveyance of the permit rights to Fox Run, Sentry's

refusal to fund interest payments by Fox Run on its debt to

Quinaquisset, and alleged attempts by Sentry to cloud title

to the house lots conveyed to Quinaquisset. The pleading

does claim that Evergreen holds the permit rights in a

constructive trust and seeks recision of the original

transfer to Fox Run.

In June 1991, Evergreen filed a motion to dismiss or for

summary judgment. On September 10, 1991, the district court

granted summary judgment for Evergreen on the count seeking

recision, concluding that the recision count sought to

challenge Evergreen's title to Willowbend; this, the district

court found, was inconsistent with Quinaquisset's obligations

under the agreement of June 22, 1990, quoted above, that had

permitted the mortgage sale to proceed. On April 21, 1992,

the court granted summary judgment for Evergreen on the

remaining counts. The court did not issue a written opinion

-6-

but it appears that the dismissal was premised on the

D'Oench, Duhme doctrine, which limits claims based on matters

not reflected in bank records. See D'Oench, Duhme & Co. v.

FDIC, 315 U.S. 447 (1942).2

On May 12, 1992, the district court ordered the separate

entry of judgment in favor of Evergreen on all counts,

finding pursuant to Fed. R. Civ. P. 54(b) that there was no

just reason for delay. We pass over related procedural

history and note that the reason for the separate judgment

stemmed from an earlier determination by the district court

that the recision claim against Evergreen needed a prompt

definitive resolution so that Evergreen could complete the

sale of Willowbend to a prospective buyer. Since

Quinaquisset was seeking immediate appellate review of the

recision claim, the district court thought it suitable that

all claims against Evergreen should be before this court at

the same time. Thus, the judgment dismissing all claims

against Evergreen is properly before us; the balance of the

2The district court relied on the doctrine in a
memorandum and order of July 19, 1991, granting summary
judgment to the RTC on all counts except the recision
request; that request had been dismissed by the court in
early May 1991 based on the agreement of June 22, 1990. In
an order dated May 12, 1992, the court indicated that the
same reasoning was implicated in Evergreen's case.

-7-

litigation involving other parties remains in the district

court.3

3Quinaquisset contests the Rule 54(b) certification but
its argument is unpersuasive. The thread of the argument is
that to enter a judgment facilitating a sale of Willowbend
could impair Quinaquisset's prospects of recovering the
permit rights. If so, Quinaquisset was free to seek a stay
of judgment from the district court or from us. Absent a
showing that would warrant a stay, the desire to facilitate a
sale of assets, in connection with a bank reorganization, is
a perfectly good ground for the Rule 54(b) determination.
See generally Curtiss-Wright Corp. v. General Electric Co.,

446 U.S. 1, 8 (1980).

-8-

III.

Like the district court we separate the claim for

recision against Evergreen from the balance of the claims

against it. Our reason for doing so is that a claim to

recover property is the one line of attack made by

Quinaquisset that we can imagine succeeding against Evergreen

without a separate showing of wrongful conduct by Evergreen.

Putting to one side a possible D'Oench, Duhme defense, there

might be circumstances in which Evergreen--without any

wrongdoing on its part--became a holder of property

wrongfully taken by Sentry or others from Quinaquisset. In

that case, whether by recision, constructive trust or some

other theory or device, perhaps the property could (in some

circumstances) be reached even though in the hands of an

innocent possessor.

The district court foreclosed this possibility by ruling

on September 10, 1991, that the June 22, 1990, agreement

between the parties prevented such a recovery. Treating

Evergreen's title as derived from the foreclosure sale, the

district court interpreted the agreement as preventing a

subsequent attack on the resulting title and ruled that

"Evergreen owns the property free of any title defect . . .

." Quinaquisset asserts that the district court misconstrued

the agreement, ignoring the reservation of rights provisos.

-9-

Subject to the rights reservations, Quinaquisset agreed

in the June 22 document not to obstruct the foreclosure sale

"or to take any further action subsequent thereto with

reference to the validity of said foreclosures or the

[m]ortgages relating thereto . . . ." Evergreen argues that

"[t]he clear meaning of the [agreement] . . . is that

Quinaquisset agrees not to take any action to challenge or

impair the foreclosure purchaser's title in Willowbend." The

reservations of rights, it argues, were meant to retain

Quinaquisset's damage claims, and not its right to institute

a future action affecting title to Willowbend or the

attendant permit rights.

We think this interpretation not quite so clear as does

Evergreen, the agreement being something less than a model of

clarity. There is, after all, no express promise not to

"challenge or impair the foreclosure purchaser's title in

Willowbend." But we agree that Evergreen's reading, endorsed

by the district court, is better than any alternative

reading, considering the general language used ("any further

action . . . with reference to the validity of said

foreclosures or the [m]ortgages relating thereto") together

with the purpose to protect the foreclosure-sale buyer that

one would expect in such circumstances. If the "any further

action" promise is read in this way, then it is easy to

-10-

construe the even more general language of the rights

reservations to relate to other claims such as damages.

We might be more hesitant to reach this conclusion if

Quinaquisset had offered to us and the district court another

reasonable reading of the "any further action" clause, or if

it pointed to evidence produced or promised in the district

court to show that the parties intended the clause to have

some other meaning. But no other reading has been tendered

and no such evidence has been proffered. Instead,

Quinaquisset emphasizes the rights reservations which, as we

have noted, are quite general, ought not readily be read to

take back in the proviso what Quinaquisset appears to have

promised immediately before, and can easily be understood to

refer to other remedies such as damages.

Given the district court's interpretation which we

sustain it becomes fruitless for Quinaquisset to argue, as it

does at length, that it might otherwise have a claim to

recover the permits from Evergreen. Assuming it had such

claims, whether by recision or constructive trust, it has

surrendered them by the agreement. This court need not

decide Quinaquisset's alternative, last ditch and facially

doubtful argument that Evergreen never acquired the permits

at all (allegedly because their acquisition by Fox Run in

October 1987 was "illegal"); the claim cut off by the

judgment is Quinaquisset's claim to recover property from

-11-

Evergreen. The judgment does not address property that

Evergreen never received in the foreclosure.

IV.

Turning now to the remaining claims against Evergreen,

we sustain their dismissal on a ground not adopted by the

district court. See Doe v. Anrig, 728 F.2d 30, 32 (1st Cir.

1984) (court "free to affirm . . . on any ground supported by

the record"). Both parties treat the district court as

having dismissed those claims in reliance on the D'Oench,

Duhme doctrine, and we believe this is so. But there is no

district court opinion applying D'Oench, Duhme to Evergreen.

Although the district court did discuss the doctrine as

applied to the RTC, Quinaquisset seeks to distinguish

Evergreen's status under the doctrine. We think that there

is in the foreground of this case another basis for

sustaining the dismissal--the failure to state a claim

against Evergreen--and we rest our affirmance on that basis.

Evergreen is admittedly a separate corporation and was

apparently not a party to Fox Run's acquisition of the

permits or the Fox Run-Sentry agreement. The complaint may

in a literal sense "charge" Evergreen with wrongs such as

fraud, misappropriation, and unfair competition; but no facts

are ever alleged that connect Evergreen with the wrongful

acts described. The complaint does nakedly assert that

-12-

Evergreen is the "alter ego" of Sentry, the implication being

that it is thereby responsible for Sentry's conduct. Yet

Quinaquisset alleges no facts that, if proved, would even

arguably permit a court to impose liability on Evergreen for

the acts of its parent under an alter ego theory. See

generally United Electrical, Radio and Machine Workers of

America v. 163 Pleasant Street Corporation, 960 F.2d 1080,

1092 (1st Cir. 1992).

Similarly, the complaint asserts in one conclusory

sentence that Fox Run's obligations to Quinaquisset were

"assumed by Sentry or Evergreen" when Willowbend was

acquired. Nothing else in the complaint identifies any act

or document reflecting such an assumption by Evergreen of Fox

Run's debt to Quinaquisset or remotely suggests the factual

basis for this claim. Factual allegations in a complaint are

assumed to be true when a court is passing upon a motion to

dismiss, but this tolerance does not extend to legal

conclusions, Kadar Corp. v. Milbury, 549 F.2d 230, 235 (1st

Cir. 1977), or to "bald assertions." Chongris v. Board of

Appeals of the Town of Andover, 811 F.2d 36, 37 (1st Cir.),

cert. denied 483 U.S. 1021 (1987).

It is, of course, true that at the start of complex

litigation a party may not have all the facts, so courts

normally hesitate to dismiss under Fed. R. Civ. P. 12(b)(6)

at the outset. At the start, a reasonable basis for belief

-13-

and an outline of what one might reasonably hope to prove may

suffice to permit discovery and ward off premature motions to

dismiss. But Quinaquisset's complaint against Evergreen is

deficient; this litigation has persisted for almost two

years; and yet even now Quinaquisset is still unable to

explain what exactly it is that Evergreen did that is

wrongful. The only claims at issue on this appeal are those

relating to Evergreen. No amount of embellished attack on

Fox Run, Sentry or the RTC can replace what Quinaquisset has

still not supplied: a single, coherent, specific description

of what Evergreen has done that is wrongful.

Our appraisal of Quinaquisset's claims against Evergreen

is without prejudice to whatever claims it may assert against

others. Part of its predicament may be of its own making:

for unexplained reasons, it released a mortgage on part of

Willowbend, reconveyed valuable permit rights to Fox Run, and

took back an unsecured note on which Fox Run later defaulted.

On the other hand, this misstep, if such it was, does not

preclude the possibility that out of the welter of

surrounding events a claim was created against other active

participants. Whether this is so, and if so whether such a

claim is nevertheless barred by D'Oench, Duhme, are matters

on which we have no occasion to pass at this time.

We conclude that, apart from seeking to recover property

from Evergreen, Quinaquisset has failed to state a claim upon

-14-

which relief can be granted. The property recovery claim is

barred by the agreement for reasons already stated. Thus the

balance of the claims fail under Fed. R. Civ. P. 12(b)(6) and

on this ground we affirm the district court's dismissal of

those claims. It will be time enough to consider D'Oench,

Duhme when the rest of this litigation, now nine-tenths

submerged like the proverbial iceberg, reaches this court.

Affirmed.

-15-