**Frank HOFFMAN, etc., et al.,
Plaintiffs, Appellants,**

v.

**CITY OF WARWICK, et al.,
Defendants, Appellees.**

**Renauld LANGLOIS, etc., et al.,
Plaintiffs, Appellants,**

v.

**CITY OF EAST PROVIDENCE, et al.,
Defendants, Appellees.**

**Nos. 89–2067, 89–2068.**

United States Court of Appeals,
First Circuit.

Heard May 11, 1990.
Decided July 26, 1990.

Ina P. Schiff, for plaintiffs, appellants.

William J. Conley, for defendant, appellee City of East Providence.

Dennis S. Baluch with whom Baluch, Mahoney & Gianfrancesco was on brief, for defendant, appellee City of Warwick.

Before BREYER, Chief Judge, ROSENN,[*] Senior Circuit Judge, and CAMPBELL, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

This is a consolidated appeal from the dismissal of two class actions brought in the United States District Court for the District of Rhode Island. Plaintiffs, military veterans employed by the Cities of East Providence and Warwick, Rhode Island, brought these actions against their employers and state and city officials. The complaints allege that the defendants' failure to properly administer a Rhode Island statute, providing for seniority credits for certain veterans, and the retroactive repeal of that statute, violated plaintiffs' rights under the federal Constitution. Invoking 42 U.S.C. § 1983, plaintiffs seek damages, declaratory, and injunctive relief. The district court granted the defendants' motions to dismiss for failure to state a claim. We affirm.

_____

[*] Of the Third Circuit, sitting by designation.

## BACKGROUND

Since this is an appeal from a dismissal for failure to state a claim, we accept the facts as stated in plaintiffs' complaints, drawing all reasonable inferences in their favor. *See, e.g., Chongris v. Board of Appeals,* 811 F.2d 36, 37 (1st Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987).

### I. *The Rhode Island Veterans Seniority Statutes*

In 1945, the Rhode Island legislature adopted R.I.Gen.Laws §§ 30–21–2 and 30–21–3, providing for enhanced seniority in employment for returning war veterans. Section 30–21–2 provides:

Any member of the armed forces of the United States or any citizen of the United States who served in the armed forces of the United Nations during World War II shall, upon his reemployment by a prior employer within one year after his honorable discharge from said forces, upon proper proof of his service and the length thereof, be given by such employer in addition to the seniority rights he had when he left said employment, prior to his joining the armed forces, additional seniority rights equal to the time he served in said forces.

R.I.Gen.Laws § 30–21–2 ("Section 30–21–2"). Section 30–21–3 provides:

Seniority in new employment—Any member of the armed forces of the United States or any citizen of the United States who served in the armed forces of the United Nations during World War II shall, upon proper proof of his service and the length thereof, upon applying for employment within one year after his honorable discharge from said forces, shall [sic] possess and be given credit for seniority rights equal to the time he served in said forces.

R.I.Gen.Laws § 30–21–3 ("Section 30–21–3").

The legislature also adopted R.I.Gen.Laws § 30–21–7, which provides that "Any one [sic] knowingly violating [Section 30–21–2 or 30–21–3] shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than one thousand dollars." Later, the legislature extended all Rhode Island statutes "granting benefits or privileges to veterans" to veterans of the Korean and Vietnam Wars, as well as veterans of any other "campaign or war, declared or undeclared," in which the United States Armed Forces engages. *See* R.I.Gen.Laws § 30–22–3.

Since the adoption of Sections 30–21–2 and 30–21–3, plaintiffs say, the Rhode Island Department of Labor and other state officials have not enforced Section 30–21–3, granting seniority credit to veterans securing new employment. However, the State has enforced Section 30–21–2, granting seniority to veterans returning to prior employment. Likewise, municipal employers, including the defendants, have not granted enhanced seniority to newly-employed veterans under Section 30–21–3, but have granted enhanced seniority to re-employed veterans under Section 30–21–2. State and municipal officials, including the defendants, have failed to inform, and have misled, newly-employed veterans about their rights to seniority credit under Section 30–21–3. In contrast, plaintiffs allege, state officials have provided re-employed veterans with information concerning their rights to seniority credit under Section 30–21–2.

In June 1985, allegedly in response to the fact that municipal employers in Rhode Island were facing a plethora of requests for enhanced seniority from veterans who had recently discovered Section 30–21–3, the Rhode Island legislature repealed Section 30–21–3, giving the repeal retroactive effect. The Repeal Statute provides:

SECTION 1. Section 30–21–3 ... is hereby repealed in its entirety.

The provisions of this article are deemed to be severable and the invalidation of any particular provision or section hereof shall not be deemed to affect the validity of any other provisions or sections, all of which are deemed to be independent.

SECTION 2. This article shall take effect upon passage and shall be given retroactive effect.

R.I.Pub.Law ch. 181, § 64 ("the Repeal Statute").[1] Section 30–21–2, providing seniority credit for re-employed veterans, was left in effect.

## II. *Specific Allegations Concerning Plaintiffs Hoffman and Langlois*

Plaintiff Hoffman served on active duty in the United States Air Force, during time of conflict from May 1972 to November 15, 1974, when he was honorably discharged. He applied for employment as a firefighter with the City of Warwick in December 1974, and at that time presented to the City proof of his military service and his honorable discharge. Hoffman's application was accepted, and on March 3, 1975, for the first time, he became an employee of the City of Warwick.

Langlois served on active duty in the United States Army during time of conflict from June 1964 to June 24, 1967, when he was honorably discharged. That year, he applied for employment with the City of East Providence, presenting proof of his military service and his honorable discharge. He was first employed by East Providence, as a police officer, on December 29, 1967.

At the time plaintiffs were hired by defendants Warwick and East Providence (the "Cities"), they were unaware of their right to seniority credit under Section 30–21–3. The Cities did not grant them seniority credit for their time spent in the service, either upon the commencement of their employment or thereafter. Neither the Cities nor any state official ever informed plaintiffs that they had any right to enhanced seniority under Section 30–21–3. Instead, veterans who had obtained new employment after leaving the service were led to believe that they had no rights to credit for their time in the service, other than a limit-

ed right to purchase certain retirement system credits.

In 1984, plaintiffs first became aware of the right to seniority credit extended to newly-employed veterans under Section 30–21–3. Shortly thereafter, plaintiffs requested their municipal employers to grant them enhanced seniority pursuant to Section 30–21–3.

The City of Warwick declined Hoffman's request, informing him that Section 30–21–3 provided no special rights to Hoffman or other veterans who obtained new employment after leaving the service. Hoffman then filed a grievance with the firefighters union, seeking to compel the City of Warwick to grant him seniority credit. The grievance was presented to the Warwick Board of Public Safety, which, for the most part, denied Hoffman's request for enhanced seniority, in July 1985. The Board did, however, allow Hoffman enhanced seniority with respect to selection of assignment, vacation schedule, and other non-monetary benefits. It refused to grant him enhanced seniority with respect to salary or any other monetary benefit. In August 1985, the Board rescinded Hoffman's limited grant of enhanced seniority, relying on the repeal of Section 30–21–3.

In response to Langlois's and others' requests for seniority credit under Section 30–21–3, the City of East Providence acknowledged that these employees satisfied the criteria of Section 30–21–3, and calculated certain benefits that would be due each Section 30–21–3 claimant. However, East Providence never conferred these benefits on Langlois or the other claimants. In June 1985, after enactment of the Repeal Statute, East Providence denied the requests for enhanced seniority relying on the Repeal Statute.

---

**1.** The Repeal Statute also contained a provision stating:

> The remedy for any alleged violation of section 30–21–3 of the general laws including any pending cases providing for veterans' benefits in connection with employment, including without limitation, any seniority rights, shall be limited to prospective injunctive relief and shall not include any award of dam-

ages, back pay, attorneys' fees, or any retroactive redress for any alleged past violations.

The Supreme Court of Rhode Island has held that this provision was intended to limit the remedies for Section 30–21–3 violations if the retroactive repeal of the section were invalidated. *See Brennan v. Kirby*, 529 A.2d 633, 638 (R.I.1987).

### III. *Proceedings*

In the Fall of 1985, the plaintiffs brought these actions under 42 U.S.C. § 1983, in the United States District Court for the District of Rhode Island.[2] Hoffman brought his complaint "individually and on behalf of all other [similarly situated] employees, retired employees and former employees of the City of Warwick," naming as defendants the City of Warwick and various Warwick officials. Langlois brought his complaint "individually and on behalf of all other [similarly situated] employees, retired employees and former employees of the City of East Providence,"[3] naming the City of East Providence as defendant.[4] The complaints allege that the Repeal Statute violated plaintiffs' federal constitutional rights under the Contract Clause, the Due Process Clause, and the Equal Protection Clause. Additionally, plaintiffs allege that the defendants' failure to inform them of their Section 30–21–3 rights and to grant them enhanced seniority, prior to the enactment of the Repeal Statute, violated their due process and equal protection rights.[5]

Plaintiffs contend that Section 30–21–3 bestowed upon them a right to enhanced seniority, which "vested" once they became employed by the Cities and presented proof of their honorable discharge from the armed services. They allege that had they been granted the seniority credit they were entitled to under Section 30–21–3, they would have begun and continued their employment at a higher salary, with increased rights in areas such as training, assignments, education, and promotion, and they would have received increased credit for purposes of retirement benefits. Plaintiffs seek damages, declaratory, and injunctive relief. Among other things, they request a declaratory judgment that the Rhode Island legislature's repeal of Section 30–21–3 was unconstitutional, and an order requiring the Cities to retroactively adjust plaintiffs' salaries and pension benefits and to pay all sums that would have become due to them absent the unlawful failure to grant seniority credit under Section 30–21–3. Plaintiffs also seek attorney's fees pursuant to 42 U.S.C. § 1988.

Upon learning that a similar challenge to the Repeal Statute was pending in the Rhode Island Supreme Court, the district court stayed all proceedings in this case until that case was decided. In *Brennan v. Kirby*, 529 A.2d 633 (R.I.1987), the Rhode Island Supreme Court held that Section 30–21–3 did not create vested rights to seniority credit, but merely created "gratu-

---

**2.** Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

**3.** The record on appeal does not indicate whether the district court ever granted certification of the purported classes under Federal Rule of Civil Procedure 23.

**4.** The complaints also named the State of Rhode Island and several State officials as defendants. The parties stipulated to dismissal of these defendants after the Supreme Court ruled that "neither a State nor its officials acting in their official capacities are 'persons' under [42 U.S.C.] section 1983." *Will v. Michigan Department of State Police,* — U.S. —, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989).

**5.** Plaintiffs' complaints also contained allegations of civil rights violations, under 42 U.S.C. §§ 1985 and 1986, and of Rhode Island statutory and constitutional violations. These have not been argued on appeal. The state law claims, moreover, also seem to be foreclosed by the Rhode Island Supreme Court's opinion in *Brennan v. Kirby,* 529 A.2d 633 (R.I.1987) (rejecting similar challenge to the Repeal Statute).

Hoffman's complaint contains 17 counts and 314 paragraphs. Langlois's complaint contains 5 counts and 135 paragraphs. Both complaints are repetitive and disorganized. The district court's observations about the complaint in a related case are apt here:

A cursory reading of the complaint establishes beyond doubt that it violates both the letter and spirit of Fed.R.Civ.P. 8(a). It contains neither a short nor a plain statement of the claims being made by plaintiffs. The Court must wade through paragraph after paragraph of excess verbosity to arrive at and then understand precisely what plaintiffs are attempting to assert as a cause of action.

*West v. Bristol,* 712 F.Supp. 269, 273 (D.R.I. 1989).

ities or floating expectancies," until the benefits that would flow from enhanced seniority are actually received by employees. *Id.* at 641. The state's high court concluded that the Repeal Statute violated neither Rhode Island law nor the federal Constitution. After that decision, but before the district court had decided the present case, another district judge decided a case similar to this one, *West v. Bristol,* 712 F.Supp. 269 (D.R.I.1989). On the basis of the *Brennan* decision, it was held there that the Repeal Statute did not violate the Due Process or the Equal Protection Clause. In October 1989, citing *West v. Bristol,* the district court dismissed the instant complaints. This appeal followed.

## DISCUSSION

### I. *The Contract Clause*

Plaintiffs argue that Section 30–21–3 conferred an enhanced seniority status upon them, "which became part of the individual employment contract between each veteran and his employer and which entitled the veteran to all perquisites of seniority accorded by the employer." Repeal of Section 30–21–3 allegedly impaired that contract in violation of the Contract Clause, Article 1, section 10 of the United States Constitution.[6]

■ The Contract Clause is applicable to *contracts* into which a state enters, but normally state statutory enactments do not of their own force create a contract with those whom the statute benefits. *See National Railroad Passenger Corp. v. Atchison, Topeka & Santa Fe Railway Co.,* 470 U.S. 451, 465–66, 105 S.Ct. 1441, 1451–52, 84 L.Ed.2d 432 (1985) ("[A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'"). A statute will thus be treated as a binding contract only "when the language and circumstances evince a legislative intent to create

private rights of a *contractual* nature enforceable against the state." *United States Trust Co. of New York v. New Jersey,* 431 U.S. 1, 17 n. 14, 97 S.Ct. 1505, 1515 n. 14, 52 L.Ed.2d 92 (1977) (emphasis added).

■ The language and circumstances of Section 30–21–3 do not suggest a legislative intent to create private contractual rights. They evince, at most, an intent to create entitlements analogous to welfare and other government benefits. *Cf. United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 174, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980) ("[statutory] railroad benefits, like social security benefits, are not contractual and may be altered or even eliminated at any time"). Section 30–21–3 did not by itself, therefore, contractually bind either the state of Rhode Island or its municipalities. *See Dodge v. Board of Education,* 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57 (1937) (state statute providing for payment of annuities to retired teachers created no contractual rights in beneficiaries of statute). *Compare Indiana Ex Rel. Anderson v. Brand,* 303 U.S. 95, 105, 58 S.Ct. 443, 448, 82 L.Ed. 685 (1938) (state statute that has a title "couched in terms of contract"; that "speaks of the making and cancelling of indefinite contracts"; and that uses language which expressly "define[s] a contractual relationship" between teachers and school corporations, created contractual rights in teachers).

To be sure, if prior to the repeal of Section 30–21–3, the Cities had contractually obligated themselves to grant enhanced seniority to plaintiffs, their breaking of such a contract pursuant to the Repeal Statute might have implicated the Contract Clause. However, plaintiffs have not alleged that they secured from their municipal employers a specific commitment to confer the enhanced seniority provided by Section 30–21–3. On the contrary, they complain of the Cities' complete failure to extend to them any rights whatsoever un-

---

**6.** The states are prohibited from passing any "Law impairing the Obligation of Contracts." U.S. Const., Art. I, § 10.

der Section 30–21–3. As no contractual rights were affected, the Repeal Statute did not impair an existing contract, in violation of the Contract Clause.

## II. *The Takings Clause*

The Takings Clause of the Fifth Amendment provides that "private property" shall not "be taken for public use without just compensation." U.S. Const., Amend. V. The Takings Clause is applicable to the states through the Fourteenth Amendment. *See, e.g., Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980); *Penn Central Transportation Co. v. New York,* 438 U.S. 104, 122, 98 S.Ct. 2646, 2658, 57 L.Ed.2d 631 (1978). Plaintiffs' complaints make numerous allegations that the repeal of Section 30–21–3 deprived them of "vested property rights" without due process, in violation of the Fourteenth Amendment. Although they do not specifically refer to the Takings Clause, they appear to argue that Section 30–21–3 conferred "vested property rights," which could not be retroactively taken (at least without compensation).

The Cities argue that the plaintiffs' claim that they have been deprived of protected property rights is precluded by the Rhode Island Supreme Court's determination that Section 30–21–3 merely created "floating expectancies" and not vested property rights. They contend that because any property interest in enhanced seniority arises from state law, of which the Rhode Island Supreme Court is the final arbiter, plaintiffs' vested property rights claim is foreclosed by that tribunal's decision in *Brennan.*

■ The Cities' argument misconstrues the role of state law in determining the scope of protection afforded to property rights under the federal Constitution. That the property interest allegedly protected by the federal Due Process and Takings Clauses arises from state law does not mean that the state has the final say as to whether that interest is a property right for federal constitutional purposes. Rather, federal constitutional law determines whether the interest created by the state rises to the level of "property," entitled to the various protections of the Fifth and Fourteenth Amendments. *See Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 164, 101 S.Ct. 446, 452, 66 L.Ed.2d 358 (1980) (holding that the state's attempt to define the interest earned in a private fund as "public" violated the Takings Clause; "a State, by *ipse dixit,* may not transform private property into public property without compensation"). *See also Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978) ("The Fourteenth Amendment places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of property within the meaning of the Due Process Clause. Although the underlying substantive interest is created by an independent source such as state law, federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause."); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 448 (2d Cir.1980) ("[A]lthough the primary source of property rights is state law, the state may not magically declare an interest to be 'non property' after the fact for Fourteenth Amendment purposes if, for example, a longstanding pattern of practice has established an individual's entitlement to a particular government benefit.") *Accord Winkler v. Dekalb,* 648 F.2d 411, 414 (5th Cir.1981). *Cf. Lanier v. Fair,* 876 F.2d 243, 253 n. 11 (1st Cir.1989) ("whether state law, as construed by a state supreme court, creates a liberty interest protected by the fourteenth amendment is at bottom a federal question").

■ Plaintiffs, therefore, contend that notwithstanding the opinion of the Rhode Island Supreme Court, Section 30–21–3 conferred an enhanced seniority status upon them as soon as they were employed by their respective municipal employers (and had filed proper proof of service), and that this status either itself constituted a property right or gave rise to property rights which could not be retroactively taken from

**616**

them. Plaintiffs rely on *United States v. Larionoff,* 431 U.S. 864, 879, 97 S.Ct. 2150, 2159, 53 L.Ed.2d 48 (1977), in which the Court indicated that "serious constitutional questions would be presented" if Congress attempted through legislation "to deprive a service member of pay due for services already performed, but still owing." *See also Larionoff v. United States,* 533 F.2d 1167, 1179 (D.C.Cir.1976) ("Since contractual rights against the government are property interests protected by the Fifth Amendment, Congressional power to abrogate existing government contracts is narrowly circumscribed."), *aff'd United States v. Larionoff,* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977); *Foley v. Carter,* 526 F.Supp. 977, 985 (D.D.C.1981) ("The right to a salary for work performed at the rate admittedly effective during the period when the work was performed is a right or property interest, a legitimate entitlement which qualifies for protection against governmental interference under the Due Process Clause of the Fifth Amendment.").

An initial difficulty with this argument is that, as already pointed out, plaintiffs have not shown that the State or their employers ever provided a *contractual* guarantee of the seniority benefits in Section 30–21–3. Lacking a contractual right to enhanced seniority, plaintiffs' interest in the tangible benefits that flow from enhanced seniority is not analogous to a government employee's interest in salary payments that have already accrued. For most of the time plaintiffs were themselves unaware of the seniority provision. They neither accepted their jobs, nor worked, in reliance upon it.

No contractual nor quasi-contractual obligation came into being.

■ In the absence of a contractual right to enhanced seniority, it is clear that, at least as to prospective seniority benefits, any expectancy that seniority enhancement provided by Section 30–21–3 would continue to exist did not give rise to a property right protected by the Takings Clause. Noncontractual employee benefits that a recipient has not yet received, but has a mere expectation of receiving, are not property as to which the government, before repealing, must provide just compensation. *See United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 174, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980) ("There is no claim here that Congress has taken property in violation of the Fifth Amendment, since railroad benefits, like social security benefits, are not contractual and may be altered or even eliminated at any time."); *Kizas v. Webster,* 707 F.2d 524, 539 (D.C.Cir.1983) ("A 'legitimate claim of entitlement' to a government [employee] benefit does not transform the benefit *itself* into a vested right."), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984); *Zucker v. United States,* 758 F.2d 637, 640 (Fed.Cir.) ("a 'government fostered expectation' that retirees will be provided retirement annuities which will not be ravaged by inflation ... does not rise to the level of 'property' protected by the takings clause"), *cert. denied,* 474 U.S. 842, 106 S.Ct. 129, 88 L.Ed.2d 105 (1985).[7] Thus, statutory preferences or benefits conferred upon veterans do not give rise to compensable property rights. *See Monaco*

---

7. *See also Richardson v. Belcher,* 404 U.S. 78, 80–81, 92 S.Ct. 254, 256–57, 30 L.Ed.2d 231 (1971) ("Nor does an expectation of public benefits confer a contractual right to receive the expected amounts.... [T]hat as a matter of procedural due process the interest of a welfare recipient in the continued payment of benefits is sufficiently fundamental to prohibit [their termination] without a prior evidentiary hearing [does not mean that this interest] impose[s] a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement to public benefits."); *Bowen v. Gilliard,* 483 U.S. 587, 607, 107 S.Ct. 3008, 3020, 97 L.Ed.2d 485 (1987) ("child receiving support payments holds no vested protectable expecta-

tion that his or her parent will continue to receive identical support payments on the child's behalf, and that the child will enjoy the same rights with respect to them"); *Flemming v. Nestor,* 363 U.S. 603, 611, 80 S.Ct. 1367, 1372–73, 4 L.Ed.2d 1435 (1960) ("We must conclude that a person covered by the [Social Security] Act has not such a right in benefit payments as would make every defeasance of 'accrued' interests violative of the Due Process Clause."); *Gattis v. Gravett,* 806 F.2d 778, 780 (8th Cir.1986) ("[T]he legislature which creates a statutory entitlement (or other property interest) is not precluded by having done so from altering or terminating the entitlement by subsequent legislative enactment.").

*v. United States,* 523 F.2d 935, 939 (9th Cir.1975) (Veterans Preference Act, which gave veterans preference to retention in civil service, did not confer "a vested, unrepealable" right to such preference), *cert. denied,* 424 U.S. 914, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976); *Mack v. United States,* 635 F.2d 828, 832, 225 Ct.Cl. 187 (1980) ("Plaintiff does not have a taking claim under the just compensation clause because the provisions of the Veterans Preference Act cited by plaintiff that establish applicant eligibility lists do not create an interest in property subject to being taken for public use."), *cert. denied,* 451 U.S. 913, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981); *Milliken v. Gleason,* 332 F.2d 122, 123 (1st Cir.1964) ("[V]eterans' benefits are gratuities and establish no vested rights in the recipients so that they may be withdrawn by Congress at any time and under such conditions as Congress may impose."), *cert. denied,* 379 U.S. 1002, 85 S.Ct. 723, 13 L.Ed.2d 703 (1965); *Lynch v. United States,* 292 U.S. 571, 576–77, 54 S.Ct. 840, 842, 78 L.Ed. 1434 (1934) ("Pensions, compensation allowances and privileges [accorded to former members of the army and navy] are gratuities. They involve no agreement of parties; and the grant of them creates no vested right. The benefits conferred by gratuities may be redistributed or withdrawn at any time in the discretion of Congress.") (dicta).

Plaintiffs argue, however, that the Repeal Statute's effects are not limited to cutting off *prospective* benefits: the statute also revokes benefits that plaintiffs earlier became entitled to, but never received, when they were first hired or, at least, when in 1984 they filed claims. To determine whether the retroactive effect of the Repeal Statute rendered it a taking requiring just compensation, we look at three factors the Supreme Court has found of "particular significance," in assessing Takings Clause challenges: "(1) the economic impact of the [statute] on the claim-

ant; (2) the extent to which the [statute] has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Bowen v. Gilliard,* 483 U.S. 587, 606, 107 S.Ct. 3008, 3020, 97 L.Ed.2d 485 (1987); *Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S. 211, 225, 106 S.Ct. 1018, 1026, 89 L.Ed.2d 166 (1986). *See also Pineman v. Fallon,* 842 F.2d 598, 602 (2d Cir.) (applying three-factor inquiry to statutory change of age at which state employees become entitled to retirement benefits), *cert. denied,* 488 U.S. 824, 109 S.Ct. 72, 102 L.Ed.2d 48 (1988). Applying these factors, it seems clear that the statutory revocation of whatever right plaintiffs may have had to seniority benefits prior to the enactment of the Repeal Statute, does not amount to a compensable taking.

First, the Repeal Statute's economic impact on the plaintiffs is not so severe as to render it a taking. Although the repeal deprived plaintiffs of a preference they previously were entitled to invoke, it did not deprive them of monetary benefits already paid over.[8] The Repeal Statute left them in the same employment relationship they had accepted when they were hired by the municipalities. At that time, they were not granted the benefit of enhanced seniority, nor were they apparently aware of any such right. After the repeal, their position was no different economically from that of those employees who had not served in the military. *Cf. Pineman,* 842 F.2d at 602 (statutory change in state retirement law requiring female employees to work until age 55 to receive full retirement benefits instead of age 50, as under the prior law, did not have severe economic impact where prior law already imposed this requirement on male employees).

Second, since the statute does not deprive plaintiffs of contractual rights, it does not interfere with "investment-backed expectations." *See Pineman,* 842 F.2d at 603 (statutory change of state retirement

---

**8.** The only benefit which the complaint alleges was actually granted was the limited grant of seniority that the Warwick Board of Public Safety extended to Hoffman in July 1985, and rescinded the next month. Plaintiff Hoffman has not argued that the City of Warwick's rescission of this limited grant, which included no monetary benefits, constituted a Takings Clause violation.

age as applied to persons who were state employees prior to the change "did not interfere with investment-backed expectations," "since there were no contractual rights").

Finally, the nature of the government action, under the Repeal Statute, was not to "physically invade or permanently appropriate any of the [plaintiffs'] assets for [the State's] own use." *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. at 225, 106 S.Ct. at 1026. Instead, by removing an advantage previously extended to certain veterans, "the legislature merely made an adjustment of the benefits and burdens of economic life, not a taking requiring government compensation." *Pineman*, 842 F.2d at 602. *See also Connolly*, 475 U.S. at 225, 106 S.Ct. at 1026 (legislation that "adjusts the benefits and burdens of economic life to promote the common good ... does not constitute a taking requiring Government compensation").

We hold, therefore, that the retroactive effect of the Repeal Statute did not give rise to compensation rights under the Takings Clause.

### III. *Substantive Due Process*

■ Although the Repeal Statute did not deprive plaintiffs of a compensable property right, plaintiffs have alleged a tangible interest in the seniority benefits conferred by Section 30–21–3 sufficient to invoke the general constitutional protection against arbitrary and irrational governmental action. *See, e.g., Flemming v. Nestor*, 363 U.S. 603, 610–11, 80 S.Ct. 1367, 1372–73, 4 L.Ed.2d 1435 (1960) (Although an employee's interest in benefits under the Social Security Act does not rise to the level of an "accrued property right," "[t]he interest of a covered employee under the Act is of sufficient substance to fall within the protection from arbitrary governmental action afforded by the Due Process Clause."). Plaintiffs allege that the Repeal Statute's retroactive deprivation of their prior benefits was "arbitrary and capricious," be-

cause it was not justified by a legitimate public purpose. *See Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 17, 96 S.Ct. 2882, 2893, 49 L.Ed.2d 752 (1976) ("The retrospective aspects of legislation, as well as the prospective aspects must meet the test of due process, and the justifications for the latter may not suffice for the former.").

We hold that the repeal of Section 30–21–3 passes rational basis review. Since plaintiffs do not argue that they relied on Section 30–21–3 in accepting employment with the Cities or in entering the service, there is no particular unfairness to them in the retroactive aspect of the Repeal Statute. *Cf. Usery*, 428 U.S. at 17, 96 S.Ct. at 2893 ("justification for the retrospective imposition of liability must take into account the possibilit[y] that ... conduct may have been taken in reliance upon the current state of the law"). Retroactive application is justified by the state's rational legislative purpose of "avoid[ing] the unanticipated potential for financial calamity that would beset the state and municipalities, as well as private employers within the state, if they were now required to credit plaintiffs with seniority benefits for prior military service." *Brennan*, 529 A.2d 633, 641 (R.I.1987). *See Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 730, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601 (1984) (Due Process is satisfied "simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose.").[9]

Plaintiffs also argue that the Cities' failure to afford them seniority credit and the State's failure to enforce Section 30–21–3 *prior to the repeal* was "arbitrary and capricious." However, as we explain in our discussion of the equal protection issue, the pre-repeal administrative policy of not enforcing section 30–21–3 was supported by a rational basis, notwithstanding the fact that it violated state law. *See* Part VI, below. Consequently, the policy did

---

**9.** Whether the *classification* created by the Repeal Statute, distinguishing between re-employed veterans and newly-employed veterans, is supported by a rational basis is addressed in our discussion of the equal protection claim. *See* Part VI, below.

not violate substantive due process. *See generally United States Citizens Living in Nicaragua v. Reagan,* 859 F.2d 929, 943–44 (D.C.Cir.1988) ("Substantive due process doctrine does not protect individuals from all [governmental] actions that infringe liberty or injure property in violation of some law. Rather, substantive due process prevents 'governmental power from being used for purposes of oppression,' or 'abuse of government power that shocks the conscience,' or action that is 'legally irrational in that it is not sufficiently keyed to any legitimate state interests.'") (citations omitted). *See also Diaz v. United States Postal Service,* 853 F.2d 5, 10 (1st Cir.1988) ("In challenging the constitutionality of a regulation under the Due Process Clause, the appellant must show that there is no rational relation between the regulation and a legitimate governmental objective.").

## IV. Procedural Due Process

█ Plaintiffs claim a violation of procedural due process. For procedural due process purposes, a protected property interest in statutory benefits arises when state law creates a "legitimate claim of entitlement" to the benefits. *See, e.g., Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Castro v. United States,* 775 F.2d 399, 405 (1st Cir.1985). Section 30–21–3 establishes a category of veterans who "shall" be provided enhanced seniority. Plaintiffs have claimed to satisfy all the eligibility criteria of that section. It can therefore be argued that before the Cities could deny seniority credit, the Due Process Clause required the Cities to afford plaintiffs some level of

process, either when plaintiffs obtained employment with the Cities or when they filed claims for seniority in 1984, to determine whether they had satisfied the statute's eligibility requirements. *See, e.g., Daniels v. Woodbury County, Iowa,* 742 F.2d 1128, 1132–33 (8th Cir.1984) (Where state statute provided that "County 'shall' provide for the relief of poor persons," there arose "a legitimate claim of entitlement and expectancy of benefits in persons who claim to meet the eligibility requirements," therefore requiring "minimum due process in the administration of [the] general relief program."); *Griffeth v. Detrich,* 603 F.2d 118, 121 (9th Cir.1979) ("the authorizing statute coupled with the implementing regulations of the county creates a legitimate claim of entitlement and expectancy of benefits in persons who claim to meet the eligibility requirements," so that applicants for such benefits were entitled to due process before having their applications denied), *cert. denied,* 445 U.S. 970, 100 S.Ct. 1348, 64 L.Ed.2d 247 (1980); *Holbrook v. Pitt,* 643 F.2d 1261, 1278 n. 35 (7th Cir. 1981) ("Applicants who have met the objective eligibility criteria of a wide variety of governmental programs have been held to be entitled to protection under the due process clause.") (citing numerous cases).[10]

█ By-passing for the moment whether any due process claim lies against the municipal employers for their nonfeasance *prior* to the Repeal Statute, it is clear that the Repeal Statute itself did not violate procedural due process. Where the legislature enacts general legislation eliminating statutory rights or otherwise adjusting the benefits and burdens of economic life, in the absence of any substantive con-

---

**10.** The Supreme Court has characterized as an open question the issue of whether an *applicant* for government benefits, as opposed to someone already receiving benefits, is protected by the Fourteenth Amendment's guarantee of procedural due process. Compare *Lyng v. Payne,* 476 U.S. 926, 942, 106 S.Ct. 2333, 2343, 90 L.Ed.2d 921 (1986) (noting that the Court has "never held that applicants for benefits, as distinct from those already receiving them, have a legitimate claim of entitlement protected by the Due Process Clause of the Fifth or Fourteenth Amendment," but leaving the question unresolved) with *Gregory v. Pittsfield,* 470 U.S. 1018,

1021, 105 S.Ct. 1380, 1381–82, 84 L.Ed.2d 399 (1984) ("One would think that where the state law creates an entitlement to general assistance based on certain substantive conditions, there similarly results a property interest that warrants at least some procedural safeguards. Although this Court has never addressed the issue whether applicants for general assistance have a protected property interest, the weight of authority among lower courts is [that they do].") (O'Connor, J., joined by Brennan and Marshall, JJ., dissenting from denial of certiorari) (citations omitted).

stitutional infirmity, "the legislative determination provides all the process that is due." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982). *See also Atkins v. Parker,* 472 U.S. 115, 129–30, 105 S.Ct. 2520, 2528–29, 86 L.Ed.2d 81 (1985) ("The procedural component of the Due Process Clause does not 'impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement to public benefits.' ... 'The legislative determination provides all the process that is due.' ") (citations omitted).

Plaintiffs, however, argue that the Cities' failure to accord them enhanced seniority status under Section 30–21–3, *prior* to the enactment of the Repeal Statute, constituted a denial of "benefits to which they had [a] contractual or statutory entitlement ... without due process of law." Plaintiffs further point out that in denying these entitlements, the Cities "made no pretense of providing any pre- or post-deprivation hearings."

■ We have already concluded that plaintiffs' allegations fail to show a *contractual* entitlement to enhanced seniority or its accompanying benefits. On the other hand, plaintiffs' alleged *statutory* entitlement to enhanced seniority status under Section 30–21–3 raises the question whether, prior to the enactment of the Repeal Statute, the Cities' denial of enhanced seniority without a hearing constituted a deprivation of property without procedural due process.[11]

The answer is "No." Plaintiffs have not alleged that they were denied seniority enhancement because of a determination that particular persons did not satisfy the requirements of Section 30–21–3. On the contrary, plaintiffs have alleged and ar-

gued that the failure to grant them enhanced seniority was part of a uniform policy, followed by the Cities and the Rhode Island Department of Labor, of providing enhanced seniority rights under Section 30–21–2 for re-employed veterans, while not providing such rights, at all, to newly-employed veterans under Section 30–21–3. This policy was allegedly implemented shortly after Section 30–21–3 was adopted in 1945, long before the plaintiffs had obtained employment with the Cities.[12]

■ When statutory benefits are denied or terminated pursuant to a class-wide policy determination, as opposed to an individual determination of eligibility, the Due Process Clause does not require the state to afford a hearing to each affected individual. *See Carson v. Block,* 790 F.2d 562, 566 (7th Cir.) ("[T]he failure to implement the statute at all was a legislative-type decision for which no individual hearing was necessary. Once the Department [of Agriculture] made this class-wide decision, it did not need to give the [plaintiffs] a further hearing.") (citations omitted) (alternative holding), *cert. denied,* 479 U.S. 1017, 107 S.Ct. 669, 93 L.Ed.2d 721 (1986); *Kizas v. Webster,* 707 F.2d 524, 540, n. 88 (D.C.Cir. 1983) ("This claim of a due process right to [a government employee benefit] confuses disputes involving an individual's entitlement to a benefit with situations involving across-the-board revocation of the benefit *itself.* The distinction is critical."), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984). *See also O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 800, 100 S.Ct. 2467, 2483, 65 L.Ed.2d 506 (1980) (Blackmun, J., concurring in the judgment) ("When governmental action affects more than a few individuals, concerns beyond economy, efficiency, and expedition

---

**11.** Our holding that plaintiffs have not been deprived of a property interest for Takings Clause purposes is not determinative of the issue whether they had a property interest for procedural due process purposes. *Cf. Richardson v. Belcher,* 404 U.S. 78, 80–81, 92 S.Ct. 254, 256–57, 30 L.Ed.2d 231 (1971) (distinguishing between property interests which are protected against termination without procedural due process and property interests which impose consti-

tutional limitations on the power of the legislature to change the law of property entitlements).

**12.** The only exception to this policy, according to plaintiffs, was that several Rhode Island municipalities, but neither of the defendant Cities, did grant seniority credit under Section 30–21–3 in response to requests made by employees in 1984. The State itself never took action to enforce Section 30–21–3.

tip the balance against finding that due process attaches."). Thus, even if Section 30–21–3 might have otherwise given rise to a statutory entitlement which could not be individually denied without a hearing, once the Rhode Island Department of Labor adopted a uniform class-wide policy of not enforcing Section 30–21–3, the statute ceased to provide an entitlement that could require individualized process to determine eligibility.

Nor do plaintiffs' allegations that the defendants misled plaintiffs as to their rights under Section 30–21–3 give rise to a federal due process claim. Since this alleged wrongful conduct was followed on a class-wide basis, it amounts to no more than a failure to implement state law, which in itself does not violate the Due Process Clause. *See, e.g., Archie v. Racine,* 847 F.2d 1211, 1218 (7th Cir.1988) (en banc) ("[S]tates may enforce, alter, or disregard [state law] so far as the Due Process Clause is concerned."), *cert. denied,* —— U.S. ——, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989). *See also Chongris v. Board of Appeals,* 811 F.2d 36, 43 (1st Cir.) ("even abridgments of state law committed in bad faith do not necessarily amount to unconstitutional deprivations of due process"), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987); *Roy v. Augusta,* 712 F.2d 1517, 1522 (1st Cir.1983) ("Mere violations of state law do not, of course, create constitutional claims"). Of course, the Constitution does impose some limits on the power of a state to selectively enforce its own laws. However, as we conclude in our discussion of the equal protection issue, these limits were not transgressed here. *See* Part VI, below.

## V. *Access to Courts*

 Plaintiffs argue that the Repeal Statute violates their Fourteenth Amendment due process rights and their "right of access to the courts," by depriving them of any "opportunity for judicial redress," for the violations of Section 30–21–3. We assume for present purposes that Rhode Island law would have recognized a private cause of action to compel the enforcement of Section 30–21–3. *See* R.I.Gen.Laws

§ 9–1–2 ("Whenever any person shall suffer any injury to his person, reputation or estate, by reason of the commission of any crime or offense, he may recover his damages for such injury in a civil action against the offender...."); R.I.Gen.Laws § 30–21–7 (making violation of section 30–21–3 a misdemeanor). *See also Rhode Island Federation of Teachers v. Employees Retirement System of Rhode Island,* 542 A.2d 249 (R.I.Sup.Ct.1988) (hearing class action suit for mandamus to compel the payment of retirement credits allegedly accrued under sections 30–21–2 and 30–21–3, but rejecting claim on its merits). If so, plaintiffs would have had a property interest in that cause of action which could not be terminated without due process. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (state-created employment discrimination cause of action is property protected by the Fourteenth Amendment's procedural due process requirements); *Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 485, 108 S.Ct. 1340, 1344–45, 99 L.Ed.2d 565 (1988) (intangible interest in a cause of action is property protected by the Fourteenth Amendment's Due Process Clause). However, the Constitution does not prevent a state legislature from "eliminat[ing]" its statutorily created causes of action altogether," since "the legislative determination provides all the process that is due." *Zimmerman Brush Co.,* 455 U.S. at 432–33, 102 S.Ct. at 1156. *See also Hammond v. United States,* 786 F.2d 8, 12 (1st Cir.1986) ("Because rights in tort do not vest until there is a final, unreviewable judgment, Congress abridged no vested rights of the plaintiff by ... retroactively abolishing her cause of action in tort."). We reject, therefore, plaintiffs' access to courts contention.

## VI. *Equal Protection*

 Plaintiffs argue that the repeal of Section 30–21–3 violates the Equal Protection Clause by discriminating between veterans seeking new employment and those returning to prior employment. Where a statutory scheme adopts a classification

that neither burdens a suspect class nor impinges on a fundamental right, the classification will withstand an Equal Protection challenge if it is rationally related to a legitimate state purpose. *See, e.g., Pennell v. San Jose,* 485 U.S. 1, 14, 108 S.Ct. 849, 858–59, 99 L.Ed.2d 1 (1988); *Dickerson v. Latessa,* 872 F.2d 1116, 1119 (1st Cir.1989).

Plaintiffs do not argue that the Repeal Statute discriminates against a suspect class or impinges on a fundamental right. Rather, they claim that the repeal of Section 30–21–3 is so arbitrary as not to pass muster under the deferential rational basis test. While repeal may serve the legitimate purpose of saving the State money, plaintiffs contend there is no rational basis for distinguishing between re-employed veterans and newly-employed veterans. *See Bishop v. Moran,* 676 F.Supp. 416, 423 (D.R.I.1987) ("Most, if not all, distinctions drawn by the state are compelled because the state's resources are not inexhaustible. Some people receive a particular benefit or treatment and others do not. But the state must provide a principled justification to explain why some win and some lose, to explain why Group A may tap the state's limited coffers and Group B may not."). In other words, the classification created by the repeal of Section 30–21–3 while leaving Section 30–21–2 in place, must itself be minimally rational. *See Zobel v. Williams,* 457 U.S. 55, 60, 102 S.Ct. 2309, 2312, 72 L.Ed.2d 672 (1982) ("When a state distributes benefits unequally, the distinctions it makes are subject to scrutiny under the Equal Protection Clause...."). *See also Sklar v. Byrne,* 727 F.2d 633, 640 (7th Cir.1984) ("Even where the governmental goal is legitimate, the government may not use arbitrary and irrational classifications to achieve its ends.").

The state, however, has wide discretion in choosing the objects which it wishes to support at a particular moment. We cannot say that the distinction drawn here was arbitrary or irrational. As the Cities argue, the state could reasonably have concluded that limiting enhanced seniority to veterans returning to prior employment would serve the legitimate state purpose of enabling the Cities and other employers to engage in effective financial planning. An employer whose employees leave to enter the service may be able to anticipate how many such employees are likely to return and be entitled to enhanced seniority. It would be far more difficult, if not impossible, for an employer to anticipate how many of its new employees over a number of years will be veterans who would have been able to claim enhanced seniority. In addition to this legitimate administrative concern, the state could reasonably have concluded that persons who enter the service at the expense of an employment position that they already have, and will later return to, have a stronger equitable interest in seniority credit for their time in the service than do persons who enter the service and seek new employment upon their discharge.[13] Since the classification at issue reflects these rational considerations, it does not violate equal protection. *See Kollett v. Harris,* 619 F.2d 134, 140 (1st Cir. 1980) ("As the legislative classification in question reflects hypotheses which we cannot say are irrational, equal protection is not violated.").[14]

---

**13.** *Ford Motor Co. v. Huffman,* 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), is not to the contrary. In *Huffman,* the Court held that a union was within its authority under the National Labor Relations Act in accepting an agreement under which the employer gave seniority credit to newly-employed veterans, as well as to re-employed veterans, when only the latter was required by federal law. In reaching this conclusion, the Court stated, "There is little that justifies giving [seniority credit for military service] to a veteran with brief prior civilian employment that does not equally justify giving it to a veteran who was inducted into military service before having a chance to enter any

civilian employment, or to a veteran who never worked for the particular employer who hired him after his return from military service." *Id.* at 339–40, 73 S.Ct. at 686–87. While the Court's statement clearly indicates that it found extending seniority credit to newly-employed veterans to be justified, and even commendable, the Court did not suggest that this was *required* under the Equal Protection Clause, or that failure to make such an extension would be *irrational* or *arbitrary.*

**14.** Plaintiffs' reliance on *Hooper v. Bernalillo County Assessor,* 472 U.S. 612, 105 S.Ct. 2862, 86

Plaintiffs somewhat more persuasively argue that their equal protection rights were violated by the unequal administration of state law *prior* to the repeal of Section 30–21–3. They point out that the administrative policy, allegedly followed by the Cities and the Rhode Island Department of Labor, prior to the enactment of the Repeal Statute, of requiring enhanced seniority for re-employed veterans under Section 30–21–2, but not for newly-employed veterans under 30–21–3, was in flagrant disregard of existing state law.

However, the fact that withholding enhanced seniority to newly-employed veterans was, at that time, contrary to state law did not transform an otherwise rational distinction into a violation of the Equal Protection Clause. As the Supreme Court has stated, in the context of an equal protection challenge:

> [O]fficial action [of a state agency] is subject to constitutional infirmity to the same but no greater extent than if the action were taken by the state legislature. *Its illegality under the state statute can neither add to nor subtract from its constitutional validity.* Mere violation of a state statute does not infringe the federal Constitution. And state action, even though illegal under state law, can be no more and no less constitutional under the Fourteenth Amendment than if it were sanctioned by the state legislature.

*Snowden v. Hughes,* 321 U.S. 1, 11, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944) (emphasis added) (citation omitted). *See also Stern v. Tarrant County Hospital District,* 778 F.2d 1052, 1054 (5th Cir.1985) (en banc) ("We reaffirm today the settled constitutional rule that state agencies may pursue legitimate purposes by any means having a conceivable rational relationship to those purposes. A decision that passes

constitutional muster under the rational basis test does not violate the equal protection clause simply because it violates a state ... statute."), *cert. denied,* 476 U.S. 1108, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986); *Muckway v. Craft,* 789 F.2d 517, 523 (7th Cir.1986) ("[T]o allege that a state's failure to enforce its own law is a violation of the federal equal protection clause, the plaintiff must set forth: (1) a classification of similarly situated persons caused by intentional or purposeful discrimination on the part of the statute's administrators; and (2) an allegation that the State's failure to enforce its law constituted a denial of a right, privilege or immunity secured by the federal constitution."); *Ortega Cabrera v. Bayamon,* 562 F.2d 91, 102 (1st Cir.1977) ("illegality of official conduct under local law 'can neither add to nor subtract from its constitutional validity'") (quoting *Snowden*). *Cf. Bauza v. Morales Carrion,* 578 F.2d 447, 451–452 (1st Cir.1978) ("There must be an 'element of intentional or purposeful discrimination' to transform the erroneous administration of a statute fair on its face into a violation of the equal protection clause.") (footnote omitted).

Whether the pre-repeal administrative policy of providing enhanced seniority for re-employed veterans but not for newly-employed veterans violated the Equal Protection Clause must, therefore, be determined by reference to the federal rationality standard, rather than by reference to Section 30–21–3. *See Stern,* 778 F.2d at 1056 ("The guarantees of the fourteenth amendment, its requirement that state laws be applied in the same way to those entitled to equal treatment and its promise of protection from arbitrary or irrational state action, are guarantees that turn on federal constitutional standards of equality and rationality rather than on state standards.").[15] Since the policy at issue here

L.Ed.2d 487 (1985), is, therefore, misplaced. In *Hooper,* the Court invalidated on equal protection grounds a New Mexico tax exemption for veterans that applied only to those veterans who established New Mexico residency prior to May 8, 1976. The court ruled that the distinction between these two classes of veterans failed to serve any rational basis. Contrary to the facts of this case, the distinction in *Hooper* was com-

pletely arbitrary and served only to advance the impermissible purpose of favoring older residents over newer residents.

15. Similarly, we have held that whether a classification effected by administrative state action violates the Equal Protection Clause cannot be determined by reference to *federal statutory* standards. In *Izquierdo Prieto v. Mercado Rosa,*

did not discriminate against a suspect class or impinge on a fundamental right, federal standards of equal protection require only that the distinction between re-employed and newly-employed veterans not be arbitrary or irrational. Our conclusion above that this distinction is rational for purposes of the Repeal Statute thus disposes of the equal protection challenge to the pre-repeal policy of not enforcing Section 30–21–3.

Plaintiffs allege that the State's refusal to enforce Section 30–21–3 was "willful, malicious, and criminal." These allegations, however, do not remedy plaintiffs' failure to show that the distinction between newly-employed and re-employed veterans is arbitrary or irrational under federal standards. *See Snowden v. Hughes*, 321 U.S. 1, 10, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944) (equal protection violation is not established "by the opprobrious epithets 'willful' and 'malicious' applied to the [state's action], or by characterizing that [action] as an unequal, unjust, and oppressive administration of [state law]").

We do not condone the State's and the defendants' failure to follow state law for a long time prior to the repeal of Section 30–21–3. The federal Constitution does not, however, provide a remedy for the state law violations alleged here. *See Archie v. Racine*, 847 F.2d 1211, 1217 (7th Cir.1988) (en banc) ("A state ought to follow its law, but to treat a violation of state law as a violation of the Constitution is to make the federal government the enforcer of state law. State rather than federal courts are the appropriate institutions to enforce state rules."); *Carson v. Block*, 790 F.2d 562, 565–66 (7th Cir.1986) ("a federal court will not require a state to follow its own law, even though adherence to governing rules is an important ingredient of

both due process and equal protection under the fourteenth amendment").

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED. Costs to appellees.

---

894 F.2d 467 (1st Cir.1990), the state appealed from a judgment entered on the jury's verdict that the state's age-based removal of plaintiff from an employment position violated the Equal Protection Clause. We reversed on the ground that the removal, even if based on age, was supported by a rational basis. *Id.* at 472–73. We recognized that the age-based removal would have been in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"), unless the defendant could demonstrate that "youth is a bona fide occupational qualification." *Id.* at 473. Since the action was brought under the Equal Protection Clause and not the ADEA, however, we found it unnecessary to decide whether the removal would have violated the latter. Instead, we relied exclusively on the constitutional standard of "whether the state's objective in effectuating an age-related transfer ... was a valid one and whether the transfer rationally furthered this objective." *Id.* at 472.